1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SETAREH LAW GROUP**
Shaun Setareh, Esq. (SBN 204514)
Thomas Segal, Esq. (SBN 222791)
Farrah Grant Esq. (SBN 293898)
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com
*Attorneys for Plaintiffs and the Certified Class*

ADDITIONAL COUNSEL ON THE NEXT PAGE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN A. ROBBINS and TIMOTHY GREEN, on behalf of themselves, all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>PHILLIPS 66 COMPANY, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>                    Defendant. | CASE No. 3:18-cv-00292-RS<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declarations of Shaun Setareh, James Hawkins, Dean Robbins, Timothy Green, Keith Washington, Ian Clare and Johnathan Paul in support thereof*]<br><br>Date: July 17, 2025<br>Time: 1:30 p.m.<br>Courtroom: 3<br><br>Action Removed: January 12, 2018<br>Action Filed: November 27, 2017 |

Case No. 3: 18-cv-00292-RS

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

**JAMES HAWKINS APLC**
James Ross Hawkins, Esq. (SBN 192925)
Gregory Mauro, Esq. (SBN 222239)
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 387-7200
Fax: (949) 387-6676
james@jameshawkinsaplc.com
greg@jameshawkinsaplc.com
*Attorneys for Plaintiffs and the Certified Class*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on July 17, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Plaintiffs Dean A. Robbins, Timothy Green, Keith Washington, and Ian Clare, on behalf of themselves and all others similarly situated and the general public ("Plaintiffs"), seek an order that this case be maintained as a class action for the purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23, on behalf of a settlement class comprised of Plaintiffs and all other persons similarly situated, for an order directing notice to the class, and for a scheduling order setting a Fairness Hearing for final approval of the proposed settlement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Shaun Setareh, and all documents and arguments in support thereof.

Plaintiffs request the following relief:

1.    Preliminary approval of the settlement as set forth in the Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement Agreement") attached as Exhibit 1 to the Declaration of Shaun Setareh ("Setareh Decl."), and all related notices and other deadlines as set forth in the Settlement Agreement or as otherwise ordered by the Court subject to the terms and conditions of the Settlement Agreement so that Plaintiffs may then move the Court for Final Approval of the Settlement Agreement;

2.    Conditional certification of the Settlement Class as defined in the Settlement; The appointment of Shaun Setareh, Thomas Segal, and Farrah Grant of Setareh Law Group; and James Ross Hawkins and Gregory Mauro of James Hawkins APLC as Settlement Class Counsel;

3.    The appointment of Plaintiffs Dean A. Robbins, Timothy Green, Keith Washington, and Ian Clare as the Class Representatives;

4.    An Order directing the dissemination of the notice of class action settlement

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

to the Settlement Class, via United States First-Class Mail as proscribed by the Settlement;

     5.     Appointment of Xpand Legal as Settlement Administrator;

     6.     An Order setting a schedule for the dissemination of notice to the Settlement Class; deadlines for Settlement Class Members to opt-out of the Settlement; and deadlines for Settlement Class Members to object to the settlement; and for a Fairness Hearing to address final approval of the Class Action Settlement Agreement following the notice period; and

     7.     Any other relief that the Court deems just and equitable under the circumstances.


DATED:  May 8, 2025          SETAREH LAW GROUP


          */s/ Farrah Grant*
          SHAUN SETAREH
          THOMAS SEGAL
          FARRAH GRANT
          Attorneys for Plaintiffs

iv.          Case No. 3: 18-cv-00292-RS

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY............................... 1

    A.     PLEADINGS AND MATERIAL ALLEGATIONS .................................. 1

    B.     EXTENSIVE LITIGATION...................................................................... 3

    C.     EXTENSIVE DISCOVERY...................................................................... 4

    D.     THE PARTIES' MEDIATION EFFORTS ............................................... 5

III.   SUMMARY OF SETTLEMENT TERMS............................................................. 5

    A.     COURT'S DISCRETION TO MODIFY NON-MATERIAL TERMS
             ......................................................................................................... 5

    B.     MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES AND
             COSTS, CLASS REPRESENTATIVE SERVICE AWARDS AND
             PAGA ALLOCATION.............................................................................. 5

    C.     CLASS RELEASES AND ALLOCATION............................................... 6

        1.     PAGA Group .................................................................................. 7

    D.     SETTLEMENT ADMINISTRATION AND NOTICE.............................. 8

    E.     DISPOSITION OF UNCASHED CHECKS AND RESERVE FUND.................... 8

IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS
    ACTION SETTLEMENTS IN THE NORTHERN DISTRICT........................... 9

V.     THE COURT SHOULD PRELIMINARILY APPROVE THE
    SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND
    ADEQUATE" UNDER RULE 23(E) (2) AND THE *CHURCHILL*
    FACTORS.............................................................................................................. 10

    A.     Class Counsel and Plaintiffs Adequately Represented the Class........................... 10

    B.     The Proposal Was Negotiated at Arm's Length...................................... 11

    C.     The Relief Provided For the Class Is Adequate...................................... 11

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1          1.     The Relief for Each of the Claims Is Adequate, Given the
2                   Costs, Risks, and Delay of Trial and Appeal ............................... 11
3          2.     The Proposed Method of Distributing Relief to the Class is
4                   Effective .......................................................................... 16
5          3.     The Proposed Award of Attorney Fees is Fair............................ 16
6          4.     Any Agreement Required to be Identified Under Rule
7                   23(e)(3) ........................................................................... 18
8     D.     Class Members Will Be Treated Equitably Relative to One Another ................ 18
9 VI.     THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE ....................................... 18
10     A.     Information About the Settlement ........................................................ 18
11          1.     Differences Between the Settlement Class and the Certified
12                   Class ............................................................................... 18
13          2.     Differences in the Claims to be Released and the Claims
14                   Certified .......................................................................... 19
15          3.     The Class Recovery Under the Settlement ................................. 20
16          4.     Other Cases Affected by the Settlement ................................... 20
17          5.     The Proposed Allocation for the Settlement Fund........................ 20
18          6.     Claim Form ....................................................................... 20
19          7.     Reversion to Defendant......................................................... 20
20     B.     Settlement Administration ................................................................. 20
21     C.     Notice ........................................................................................ 20
22     D.     Opt Outs ..................................................................................... 21
23     E.     Objections ................................................................................... 21
24     F.     Attorney Fees and Costs ................................................................. 21
25     G.     Service Enhancements ..................................................................... 21
26     I.     Timeline ..................................................................................... 22
27     J.     Class Action Fairness Act (CAFA) and Similar Requirements.............................. 22
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

K.     Comparable Outcomes ........................................................................22

VII.     THE PAGA ALLOCATION IS PROPER ........................................................22

VIII.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AND

APPOINT PLAINTIFFS AND CLASS COUNSEL TO REPRESENT

THEM ....................................................................................................................23

1.     Standard for Conditional Class Certification Upon Settlement ...................24

2.     Numerosity ...................................................................................................25

3.     Adequacy of Representation ........................................................................25

4.     Typicality .....................................................................................................25

5.     Commonality ...............................................................................................25

IX.     CONCLUSION ..........................................................................................................26

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

# **TABLE OF AUTHORITIES**

**Cases**

*Amaral v. Cintas Corp.No. 2,*
     163 Cal.App.4th 1157 (2008)............................................................................................. 23

*Amaro v. Anaheim Arena Management,* 69 Cal. App. 4th 521 (2021) ............................................ 8

*Amchem Prods., Inc. v. Windsor,*
     521 U.S. 591 (1997) ....................................................................................................... 24

*Camp v. Home Depot, U.S.A., Inc.,* 2021 WL 9794564 (Cal. Super. 2021) .................................. 11

*Camp v. Home Depot, U.S.A., Inc.,*2021 WL 9794564 (Cal. Super. 2021) .................................... 11

*Chavez v. Netflix, Inc.,*
     162 Cal. App. 4th 43 (2008)............................................................................................ 16

*Churchill Vill., L.L.C. v. Gen. Elec.,*
     361 F.3d 566 (9th Cir. 2004)........................................................................................... 10

*Class Plaintiffs v. City of Seattle,*
     955 F.2d 1268 (9th Cir. 1992) .......................................................................................... 9

*Dilts v. Penske Logistics, LLC,* No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21,
     2014).............................................................................................................................. 14

*Duran v. US Bank Nat'l Ass'n,* 59 Cal. 4th 1, 39, n. 33 (2014) .................................................... 14

*Frlekin v. Apple,*
     2021 WL 6126961 (N.D. Cal. 2021)................................................................................ 22

*Harris v. Vector Marketing,*
     2012 WL 381202 (N.D. Cal. 2012).................................................................................. 23

*In re NVIDIA GPU Litig.,*
     539 F. App'x 822 (9th Cir. 2013) .................................................................................... 11

*In re Quantum Health Resources, Inc.*
     962 F. Supp. 1254 (1997)................................................................................................ 17

*In re Syncor ERISA Litig.,*
     516 F.3d 1095 (9th Cir. 2008) .......................................................................................... 9

*In re Washington Public Power Supply Sys. Sec. Litig.*,

    19 F.3d ............................................................................................................. 17

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) ................................. 25

*Lerwill v. Inflight Motion Pictures, Inc.*,

    582 F.2d 507 (9th Cir. 1978) ................................................................................. 10

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) ...................................... 14

*Nachsin v. AOL LLC*,

    663 F.3d 1034 (9th Cir. 2011) .................................................................................. 9

*Naranjo v. Spectrum Security Services, Inc.*, 17 Cal.5th 1056, 1088 (2024)...................... 15

*Norton v. LVNV Funding, LLC*,

    2021 WL 3129568 (N.D. Cal. 2021) ...................................................................... 10

*O'Connor v. Uber Technologies, Inc.*,

    201 F.Supp.3d 1110 (N.D. Cal. 2016) .................................................................... 23

*Parkinson v. Hyundai Motor Am.*,

    258 F.R.D. 580 (C.D. Cal. 2008) ........................................................................... 25

*Rangel v. PLS Check Cashers of California Inc.*,

    899 F.3d 1106 (9th Cir. 2018) ................................................................................ 20

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (2009.)........................................ 15

*Saechao v. Landrys, Inc.*,

    2016 WL 3227180 (N.D. Cal. 2016) ...................................................................... 23

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13

    (N.D. Cal. Jun. 17, 2015) ....................................................................................... 16

*Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-

    54 ........................................................................................................................... 16

*Viceral v. Mistras Group, Inc.*,

    2016 WL5907869 (N.D. Cal. 2016) ....................................................................... 23

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ................................................................................ 16

1

2  **<u>Statutes</u>**

3  California Supreme Court held that section 226 penalties like section 203 ........................................ 15

4  LabOR Code § 2699(e)(2) ............................................................................................ 23

5  Labor Code § 2699(f)(2)............................................................................................... 22

6  Labor Code section 203 ................................................................................................ 15

7  Labor Code section 203 and 226.................................................................................... 15

8  Labor Code section 226(e) ............................................................................................ 14

9  **<u>Rules</u>**

10  Fed. R. Civ. P. 23(a) ............................................................................................. 24, 25

11  Fed. R. Civ. P. 23(a)(2) ............................................................................................. 25

12  Fed. R. Civ. P. 23(a)(3) ............................................................................................. 25

13  Fed. R. Civ. P. 23(a)(4) ............................................................................................. 25

14  Fed. R. Civ. P. 23(b)(3)............................................................................................. 25

15  Fed. R. Civ. P. 23(e) ............................................................................................. 9, 10

16  Fed. R. Civ. P. 23(e)(1)(A).......................................................................................... 9

17  Fed. R. Civ. P. 23(e)(1)(B)........................................................................................... 9

18  Fed. R. Civ. P. 23(e)(2) ............................................................................... 9, 10, 11, 18

19  Fed. R. Civ. P. 23(e)(2)(B)......................................................................................... 11

20  Fed. R. Civ. P. 23(e)(3) ............................................................................... 10, 11, 18

21  Rule 23(a)............................................................................................................... 25

22  Rule 23(b) .............................................................................................................. 25

23

24

25

26

27

28

## I.    INTRODUCTION

After years of hard fought litigation, the parties have reached a settlement of this class action and representative PAGA lawsuit. The settlement (Setareh Decl. Exh. 1) provides for a non-reversionary common fund of $12,500,000 (twelve million five-hundred thousand dollars). No class member will have to make a claim, instead checks will be mailed directly to them. Any residue from uncashed checks will go to the State of California's unclaimed property fund, which the class member will be able to claim it from. Any unused amount in the $10,000 Reserve Fund a year after preliminary approval will be sent to a *cy pres* recipient, the California State Bar Greg E. Knoll Justice Gap Fund, subject to court approval. No money will revert to the Defendant, and any deductions from the fund not approved by the Court will go back into the net settlement fund.

The Net Settlement Fund expected to be paid to Class Members – after all Court-approved deductions from the Gross Settlement Amount, *i.e.*, Class Counsel fees of $4,166,666.67 (33 1/3% of the GSA) and costs of up to $250,000, settlement administration costs estimated to be $14,500, Service Enhancements to each of the 4 Plaintiffs of $10,000 (totaling $40,000), a Reserve Fund of $10,000 for disputed, untimely and self-identified claims and a PAGA Settlement Fund of $400,000 (allocated 25% to PAGA Group Members ($100,000) and 75% to LWDA ($300,000) is $7,618,833.33. If 25% of the PAGA Settlement Fund is included ($100,000), the Net Settlement Fund is $7,718,833.33. The average estimated Settlement Share for each of the estimated 1,750 Class Members is **$4,410.76** ($7,718,833.33/ 1,750).

This Agreement comes after the Parties completed extensive fact discovery, two rounds of class certification, and cross-motions for summary judgment. The Parties also participated in two full-day mediations with experienced mediators. The parties were in a very good position to evaluate the risks of trying the case versus accepting the mediator's proposal of a $12,500,000 settlement.  For the reasons set forth herein, the proposed settlement is an excellent one, and the Court should preliminarily approve it and direct that notice go to the class.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY
### A.    PLEADINGS AND MATERIAL ALLEGATIONS

On November 27, 2017, Plaintiff Dean Robbins filed a class action against Phillips 66 in the San Francisco County Superior Court, captioned *Robbins v. Phillips 66 Company*, Case No. CGC-

17-562672, on behalf of himself and all others similarly situated asserting wage and hour causes of action. Dkt. 1.

On January 31, 2018, Plaintiff Robbins filed his First Amended Complaint adding a cause of action for civil penalties under California's Private Attorney General Act ("PAGA"). Dkt. 15.

On January 12, 2018, Defendant removed the action to this Court under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d). Dkt. 1.

On July 23, 2018, Plaintiff Timothy Green filed his wage and hour class action against Phillips 66 in the Los Angeles County Superior Court, entitled *Timothy Green v. Phillips 66 Company, et al.,* Case No. BC713777. On October 22, 209, Defendant removed the *Green* action to the Central District. On March 22, 2019, the parties' joint stipulation to transfer the case from the Central District to the Northern District was granted. On April 16, 2019, the *Green* and *Robbins* cases were deemed related actions. Setareh Decl. ¶ 8.

Plaintiffs Robbins and Green filed a Consolidated Complaint on August 16, 2019. Dkt. 79.

On August 12, 2020, Plaintiffs filed a motion for leave to file the First Amended Consolidated Complaint, in part to add Keith Washinton and Ian Clare as named Plaintiffs. Dkt. 102. The motion was fully briefed and granted. Dkt. 113. Plaintiffs' operative Complaint asserts seven causes of action: (1) failure to provide meal breaks; (2) failure to provide rest breaks; (3) failure to pay hourly and overtime wages; (4) failure to provide accurate wage statements; (5) failure to timely pay all final wages; (6) unfair competition; and (7) PAGA. Dkt. 79.

Plaintiffs alleged that Defendant sometimes failed to provide or record meal breaks, and instead automatically deducted a half-hour from each employee's time worked, whether a meal break was provided or not. Plaintiffs additionally alleged that sometimes meal breaks were not provided until after the fifth hour of work. Plaintiffs asserted that Defendant sometimes failed to provide compliant rest periods and sometimes only allowed rest breaks to be taken at the end of a shift. Moreover, Plaintiffs alleged that Defendant did not pay for off-the-clock work performed, such as time spent donning and doffing personal protective equipment and time spent performing shift turnover duties before their shift began. Plaintiffs alleged that Defendant had a policy requiring employees to maintain their radio on their person at all times and respond to calls that

come in, which would result in interrupted breaks. Finally, Plaintiffs alleged that Defendant underpaid the class because of rounded time records. *Id.*; Setareh Decl. ¶ 11.

Phillips 66 denies Plaintiffs' claims, and asserts that, during all relevant times, Class Members were properly paid for all hours worked, received all wages to which they were entitled, and provided the opportunity to take all meal and rest breaks, in accordance with California law. Phillips 66 contends the Plaintiffs' claims are not suitable for class or representative treatment and are not manageable at trial. Settlement II B; Setareh Decl. ¶ 12.

### B.    EXTENSIVE LITIGATION

This case has been aggressively litigated by both sides for over 7 years. On January 19, 2018, Phillips 66 filed its first Motion to Dismiss. Dkt.7. On January 31, 2018, Plaintiff filed his First Amended Complaint. Dkt. 15. This Court subsequently denied Phillips 66's Motion to Dismiss as moot. Dkt. 16.

On February 14, 2018, Phillips 66 re-filed its Motion to Dismiss. Dkt. 17. On February 28, 2018, Plaintiff filed an opposition to the Motion to Dismiss. Dkt. 19. On April 12, 2018, the Court entered an Order denying the Motion to Dismiss. Dkt. 22.

On August 8, 2019, this Court entered an Order consolidating this case with *Green v. Phillips 66, Inc.*, Northern District of California Case No. 3:19-cv-01558-RS. Dkt. 78.

On October 19, 2020, Plaintiffs filed their first motion for class certification. Dkt. 111. Plaintiffs moved to certify six sub-classes rooted in Phillips 66's alleged failure to provide compliant meal and rest breaks, to compensate employees for donning and doffing personal protective equipment, to record the start and end time of meal breaks actually taken, and its policy to round time worked. On March 29, 2021, this Court entered an Order granting certification of two classes, the Auto-Deduct Class and the Rounding Class. Dkt. 131. The Rounding Class in the Motion for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 rounded their punch time." The Auto-Deduct Class in the Motion for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 did not require the precise recordation of start and end times of each meal break." *Id.* Plaintiffs' request to certify a class for

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1) Radio Rest Breaks, 2) Radio Meal Breaks, and 3) Donning and Doffing were denied. *Id*. In its order granting class certification, the Court notes that "this business comprises some 1,400 non-exempt (e.g. hourly) employees, working at 17 Phillips facilities." *Id*.

On June 17, 2021, Plaintiffs attempted to renew their Motion to Certify the denied sub-classes with geographically narrower sub-classes. Dkt. 132. Plaintniff's second Motion for Class Certification was denied in its entirety. Dkt. 160.

The administrator sent out class notice on June 17, 2022 and the opt out period expired on August 16, 2022. Settlement IIA(h).

In January 2024, the Parties filed cross-motions for summary judgment. Dkts. 176, 180. On June 14, 2024, the Court issued its Order denying Plaintiffs' motion in its entirety and granting in part and denying in part Phillips 66's motion. Dkt. 195.

### C.    EXTENSIVE DISCOVERY

The Parties engaged in extensive fact discovery, including raising discovery disputes with the Court and depositions. Plaintiff submitted a letter brief regarding discovery disputes on November 8, 2018. Dkt. 35. The Parties submitted a joint letter brief regarding discovery disputes on December 6, 2018. Dkt. 43. The Parties participated in a discovery hearing with Magistrate Judge Thomas S. Hixson on December 14, 2018, which resulted in a discovery order compelling the production of class contact information and class data. Dkt. 49.

Plaintiffs obtained class contact information, electronic timekeeping and payroll data, and a sampling of paper timekeeping records, and relevant policies and practices pertaining to the claims in the case. Setareh Decl. ¶ 23. In total, over 150,000 pages of documents and electronic records were produced by Defendant.

As part of pre-class certification discovery, Plaintiffs' counsel also interviewed a number of percipient witnesses regarding the claims in this Action, which resulted in obtaining over 10 declarations that were used to support Class Certification. *Id*. ¶ 24.

In September 2020, Plaintiffs' counsel took the depositions of Defendant's Rule 30(b)(6) designees Susan Fitzhenry and Tim Ryan Stubenvoll. *Id*. ¶ 25.

Additionally, in December 2020, Defendant deposed three individuals who provided

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

declarations in support of Plaintiffs' Motion for Class Certification. *Id.* ¶ 26.

Plaintiffs Dean A. Robbins, Timothy Green, Keith Washington, and Ian Clare were deposed by Defendant. *Id.* ¶ 27.

On January 15, 2021, Plaintiffs deposed Defendant's expert Robert Crandall. *Id.* ¶ 28.

### D. THE PARTIES' MEDIATION EFFORTS

The Parties participated in two full-day mediations with experienced mediators—first in October 2019 with Tripper Ortman, and again in November 2024 with Steven Rottman, which led to this Settlement through a mediator's proposal. Settlement Agreement ("SA") ¶ II C.

## III. SUMMARY OF SETTLEMENT TERMS

### A. COURT'S DISCRETION TO MODIFY NON-MATERIAL TERMS

For the Court's discretion and efficiency, the Settlement Agreement attached to the Setareh Declaration as Exhibit 1 provides that the Court has the authority to modify the non-material terms of the parties' Agreement.  For example, the Court could, if it deems it appropriate, modify language in the class notice or modify the deadlines and requirements for objecting or opting out. However, the material terms—such as the total amount paid by Defendant, the class definitions, and the scope of the releases—may not be unilaterally changed by the Court. SA ¶ II D.

### B. MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES AND COSTS, CLASS REPRESENTATIVE SERVICE AWARDS AND PAGA ALLOCATION

The Settlement Agreement provides for a Gross Settlement Amount ("GSA") of $12,500,000. SA ¶ III 15. That amount is the maximum Defendant will pay. *Id.*

Settlement checks will be mailed directly to class members unless they opt out. SA ¶ 78. Any uncashed checks will be sent to the State of California's unclaimed property fund, which the class member will be able to claim it from. SA ¶ 80.

Subject to court approval, the following amounts will be deducted from the GSA: 1)Attorney fees in the amount of up to one third of the Gross Settlement Amount ($4,166,666.67); 2) costs not to exceed actual out-of-pocket costs incurred, but also not to exceed $250,000; 3) Settlement Administration Expenses expected to be $14,500; 4) Service Enhancements to each of the 4 Plaintiffs of $10,000, totaling $40,000; 5) a Reserve Fund of $10,000 for disputed, untimely and self-identified claims; 6) a PAGA Settlement Fund of $400,000 (allocated 25% to PAGA

Group Members ($100,000) and 75% to LWDA ($300,000); and 7) all taxes associated with the Settlement Payments. SA ¶¶ 15, 25, 33, 35, 49. The amount left over after these deductions is the Net Settlement Fund. SA ¶ 21. Any amounts for attorney fees, expenses, class representative service awards, or settlement administration expenses not approved by the Court will be reallocated to the Net Settlement Fund. SA ¶ 49(e).

Accordingly, assuming all requested deductions are approved, the Net Settlement Fund will be $7,618,833.33. The taxes associated with the Settlement Payments have not been deducted from this $7,618,833.33 figure as the amount of taxes has not yet been determined. If 25% of the PAGA Settlement Fund is included ($100,000), the Net Settlement Fund is $**7,718,833.33**.

### C.    CLASS RELEASES AND ALLOCATION

The "Class" or "Class Members" mean all current and former non-exempt or hourly paid employees who worked for Phillips 66 in California at any time during the Class Period. SA ¶ III 2. The Class Period means the period from November 27, 2013 through the date that Phillips 66 ceases operations at its Los Angeles Refinery or the date that is closest to without exceeding 500,000 Workweeks actually worked by Class Members during the Class Period, whichever is earlier. SA III 6.  Defendant has represented that the closure of the Los Angeles refinery is planned for later this year. Setareh Decl. ¶ 4.

The Settlement Class Members are releasing the following claims:

*[A]ny and all claims, rights, liabilities, demands for restitution, penalties, civil penalties, fees, costs, damages, or any other form of relief, of every nature and description, of any and all kinds, whether arising in law, equity, contract or otherwise, whether known or unknown, that accrued or will accrue prior to the end of the Class Period, that were alleged or could have been alleged, based on the facts alleged in any of the pleadings that have been filed in the Action and in any notice provided to the LWDA by any Class Representative, including, but not limited to, claims for unpaid or underpaid overtime and double time, unpaid minimum wages, and unpaid wages, including failure to pay for donning and doffing, on-call time, reporting time pay, and off-the-clock work, failure to provide compliant meal and/or rest periods, failure to pay meal and/or rest period premiums at the regular rate of pay, failure to timely pay wages during employment and/or upon separation of employment, failure to provide compliant wage statements, failure to maintain payroll records, unreimbursed business expenses, unfair and unlawful business practices, and all claims for civil penalties or other remedies recoverable under Labor Code § 2698 et seq. (PAGA). The release shall include claims arising under California Labor Code §§ 200, 201, 201.3, 202, 203, 204, 210, 215, 216, 218.6, 223, 225, 226, 226.6, 226.7, 354, 408, 510, 512, 516, 553, 558, 558.1, 1174, 1174.5, 1175, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198, 1198.5, 1199, 2802, 2804, 2810.3,*

*2810.5, the California Wage Orders, California Code of Regulations, Title 8, § 11000 et seq., the Fair Labor Standards Act (29 U.S.C. Section 20, et seq.), and California Business & Professions Code § 17200 et seq. The Released Class Claims shall apply to all Settlement Class Members.*

SA ¶ 29.

Defendant estimates that at the close of the Class Period, the Class will consistent of approximately 1,750 Class Members. Setareh Decl. ¶ 65. "Individual Class Payment" means the Settlement Class Member's pro rata share of the Net Settlement Amount calculated according to the number of Workweeks worked during the Class Period. SA ¶ III 16.

For tax reporting purposes, the Settlement allocates 35% of each Individual Class Payment as wages and 65% as penalties and interest. SA ¶ III 72.

### 1. PAGA Group

The Settlement provides for a PAGA Group of all current and former non-exempt or hourly paid employees who worked for Phillips 66 in California at any time during the PAGA Period, i.e. the period from January 30, 2017 through the end of the Class Period. SA ¶¶ 23-24.

The PAGA Group Members are releasing the following claims:

*[A]ny and all claims for civil penalties under PAGA, whether known or unknown, that has accrued or will accrue prior to the end of the PAGA Period, that were alleged or could have been alleged, based on the facts alleged in any of the pleadings that have been filed in the Action and in any notice provided to the LWDA by any Class Representative, including, but not limited to, claims for unpaid or underpaid overtime and double time, unpaid minimum wages, and unpaid wages, including failure to pay for donning and doffing, on-call time, reporting time pay, and off-the-clock work, failure to provide compliant meal and/or rest periods, failure to pay meal and/or rest period premiums at the regular rate of pay, failure to timely pay wages during employment and/or upon separation of employment, failure to provide compliant wage statements, failure to maintain payroll records, unreimbursed business expenses, and all claims for civil penalties or other remedies recoverable under Labor Code § 2698 et seq. (PAGA). The release shall include claims arising under California Labor Code §§ 200, 201, 201.3, 202, 203, 204, 210, 215, 216, 218.6, 223, 225, 226, 226.6, 226.7, 354, 408, 510, 512, 516, 553, 558, 558.1, 1174, 1174.5, 1175, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198, 1198.5, 1199, 2802, 2804, 2810.3, 2810.5, the California Wage Orders, California Code of Regulations, Title 8, § 11000 et seq.*

SA ¶ 30.

The PAGA Group Members will receive 25% of the PAGA Settlement Fund with 75% going to the LWDA. SA ¶ III 25.

The individual settlement shares of PAGA Group Members payment will be based on the

PAGA Group Members' pro rata share of 25% of the PAGA Penalties calculated according to the number of pay periods worked during the PAGA Period. SA ¶ III 17.

For tax reporting purposes, the Settlement allocates all PAGA Group payments as penalties SA ¶ 72.

### D.    SETTLEMENT ADMINISTRATION AND NOTICE

No claim form will be required to receive a Settlement Payment. SA ¶ 62. Each Settlement Class Member and PAGA Group Member will be mailed the Settlement Notice. *Id*. ¶ 61. Class Members will have sixty (60) days from the date of mailing the Settlement Notice to submit a Request for Exclusion or to object to the Settlement. *Id.* ¶ 34. PAGA Group Members do not have the right to opt out of the PAGA portion of the settlement.[1]

Class and PAGA Group Members will also have sixty (60) days from the date of mailing the Settlement Notice to submit a challenge to the Settlement Administrator regarding the dates of employment and/or workweeks worked and pay periods worked shown on their Settlement Notice Document. SA ¶ 64. Settlement Class Members submitting such a challenge will be required to submit documentation, and the final decision on whether a challenge is accepted will be made by the Settlement Administrator. *Id.*

The Settlement Administrator will provide Class Counsel and Defendant's Counsel a weekly report of activity. SA ¶ 67. The Settlement Administrator will also establish a toll-free telephone line and settlement website. *Id.*

### E.    DISPOSITION OF UNCASHED CHECKS AND RESERVE FUND

Settlement Class Members and PAGA Group Members will have 120 calendar days after mailing to cash their checks. SA ¶ 80.  Reminder postcards will be mailed to them 30 days before the check cashing deadline. *Id*. Replacement checks will be reissued upon request up to 30 days after the mailing of reminder postcards. *Id.* Settlement Class Members and PAGA Group Members will then have 60 days to cash their replacement checks. *Id.* Any uncashed funds remaining after the mailing of the replacement postcards will be sent to California's unclaimed property fund, which

---

[1] *See Amaro v. Anaheim Arena Management*, 69 Cal. App. 4th 521, 541 n. 5 (2021).

the class member will be able to claim it from. *Id.*

Any unused amount in the Reserve Fund a year after preliminary approval will be sent to a Cy Pres recipient which will be California State Bar Greg E. Knoll Justice Gap Fund or another appropriate 501(c)(3) organization agreed to by the parties and approved by the court. *Id.* ¶ 69. The Greg E. Knoll Justice Gap Fund helps the public in many ways, including by protecting the rights of consumers and workers to avoid fraud and exploitation. https://www.calbar.ca.gov/Access-to-Justice/Grants/Greg-E-Knoll-Justice-Gap-Fund.

"The cy pres remedy must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachsin v. AOL LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011). Here, that standard is met— Thus, the proposed cy pres provides direct benefit to Californian workers.

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Federal Rule of Civil Procedure 23(e) sets forth a multi-step process for determining whether a proposed class action settlement should be preliminarily approved by the Court. The parties must first "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. Proc. 23(e)(1)(A). Then, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. Proc. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2), in turn, provides:

> If the proposal would bind class members, the court may appre it only after a hearing and only on finding that it is ***fair, reasonable, and adequate*** after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;

1
2
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attor'ey's fees, including timing of payment; and
3
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.[2]
4
*Id.* (emphasis added).  As shown below, the settlement here meets the Rule 23(e) factors, as well as
5
the Northern District's Procedural Guidance on Class Action Settlements.

6
**V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND ADEQUATE" UNDER RULE 23(e)(2) AND THE *CHURCHILL* FACTORS**
7

8
**A.    Class Counsel and Plaintiffs Adequately Represented the Class**

9
Counsel representing the class must be qualified, experienced, and capable of conducting
10
the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, the
11
Setareh Law Group and James Hawkins APLC are highly experienced and skilled plaintiff's class
12
action firms that worked efficiently and diligently before resolving the case.  Setareh Decl. ¶¶ 56-
13
59; Declaration of James Hawkins ("Hawkins Decl.") ¶ 9. Attorneys and staff for Class Counsel
14
dedicated many hours to this case. Setareh Decl. ¶ 61. Setareh Law Group has also incurred over
15
$170,000 in costs to prosecute the case, more than $138,000 of which was for expert fees, and
16
$2,212 to pay the cost of class notice. Setareh Decl. ¶ 62.

17
Class representatives are adequate where they have retained experienced counsel and have
18
actively participated in the litigation. *See e.g. Norton v. LVNV Funding, LLC*, No. 18-CV-05051-
19
DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021).  Here, Dean Robbins is dedicated to this
20
case and spent substantial time and resources assisting Class Counsel throughout this litigation.
21
Setareh Decl. ¶¶ 51-53; Declaration of Dean Robbins ("Robbins Decl.") ¶¶ 4-10. Similarly,
22
Timothy Green has been dedicated and involved in this matter since the filing of his case on July

23
24
25
26
27
28
---
[2] The Ninth Circuit Court of Appeals has identified eight factors district courts may also consider: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement ("***Churchill Factors***"). *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004).  Factors 1-4 and 6 are duplicative of the Rule 23(e) factors. As to factor 5, as detailed herein there has been extensive discovery. Factor 7 is not applicable, although the LWDA will receive notice of the settlement. Factor 8 will be relevant upon final approval when the class will have had the opportunity to request exclusion or object.

23, 2018. Declaration of Timothy Green ("Green Decl."), ¶¶ 2-11. Keith Washington and Ian Clare (two individuals who worked for Defendant as Operators) stepped up and agreed to serve as class representatives. Setareh Decl. ¶ 51; Declaration of Keith Washington ("Washington Decl.") ¶¶ 3-10; Declaration of Ian Clare ("Clare Decl.") ¶¶ 3-10.

### B. The Proposal Was Negotiated at Arm's Length

The proposed Settlement arises after two non-collusive mediations facilitated by renowned mediators, including a mediator's proposal. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also In re NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013).

### C. The Relief Provided For the Class Is Adequate

The relief provided for the class is adequate, taking into account:

> (i)     the costs, risks, and delay of trial and appeal;
> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv)   any agreement required to be identified under Rule 23(e)(3)

*See* Fed. R. Civ. P. 23(e) (2)(C).

#### 1. The Relief for Each of the Claims Is Adequate, Given the Costs, Risks, and Delay of Trial and Appeal
##### a. Rounding Claims

While Plaintiffs maintain that their rounding claims are quite strong, this Court expressed doubt as to the viability of such claims. In certifying the Rounding Class, this Court noted:

> …Phillips dives headlong into the merits, stressing that its rounding policy is "neutral on its face," "neutral in practice," and therefore quintessentially lawful. *See id.* (internal quotation marks and citations omitted). To be sure, this is a compelling argument—so much so that, despite being lodged at an improper moment, it casts the specter of futility over the Rounding Class's case. Even so, and extending plaintiffs what may prove a fleeting procedural mercy, the Rounding Class is inherently certifiable.

Dkt. 131, at 10:14-19. Thus, there was a very real possibility that Plaintiffs may not have prevailed on their Rounding Class.

The *Camp* case is a major decision that materially impacts the outcome of the rounding claims in this case. The *Camp* case is a California Supreme Court case which became relevant years after the initial complaint in this case was filed. The judge in *Camp* granted summary judgment for the employer on the plaintiff's rounding claim. *Camp v. Home Depot, U.S.A., Inc.*, No. 19CV344872, 2021 WL 9794564, at *1 (Cal. Super. Apr. 12, 2021). The *Camp* plaintiffs

appealed, and the summary judgment as to one plaintiff was reversed and remanded. On October 24, 2022, the California Court of Appeal reversed the Superior Court's order granting summary judgment. *Camp v. Home Depot U.S.A., Inc.*, 84 Cal. App. 5th 638, 300 Cal. Rptr. 3d 548 (2022). On February 1, 2023, the California Supreme Court granted Home Depot's petition for review. *Camp v. Home Depot U.S.A.*, 523 P.3d 391 (Cal. 2023). The *Camp* case is pending before the California Supreme Court on the issue of whether rounding is legal where it does not harm employees in the aggregate, but individual employees are underpaid. This issue is critical to determining if Plaintiffs' rounding claims here succeed. Thus, there is a very real risk that absent Settlement, the Rounding Claim here could lose all its value. Setareh Decl. ¶ 37.

Plaintiffs argue that Defendant's rounding policy systematically undercompensated employees. Conflicting expert analyses were presented, with Plaintiffs' expert finding a net rounding difference favoring Defendant, while Defendant's expert found overcompensation. This Court found genuine issues of material fact regarding the rounding practices and therefore denied the cross motions for summary judgment as to the Rounding Class. Dkt. 195 15:12-15.

### b.    Auto-Deduct Claims

In their summary judgment motion, Phillips 66 argued that Wage Order No. 1 does not require recording meal break start and end times, and there is no private right of action to enforce it. The Court noted that the California Supreme Court's decision in *Donohue v. AMN Services, LLC*, 11 Cal. 5th 58 (2021) creates a rebuttable presumption of meal period violations if records show noncompliant meal periods. The Court stated that Defendant's failure to record meal break times constitutes an incomplete record, and Phillips 66 must rebut the presumption of non-compliance. Dkt. 195 6:17-24. Defendant argued that attestations signed by employees when filling out timecards are evidence to rebut the *Donohue* presumption. The cross motions for summary judgment were denied because this Court found that there are triable issues of material fact regarding the Auto-Deduct Class, including whether the attestations rebut the presumption.  Thus, Plaintiffs faced significant risks in persuading the trier of fact that Defendant would rule in Defendant's favor on the auto-deduction claims. *Id.* 195 10: 5-9.

### c.    Non-Certified Claims

Plaintiffs faced innumerable risks regarding the non-certified claims, including the claims for failure to provide compliant meal and rest breaks, failure to pay for off-the-clock time, and waiting time

1  penalties. First, the Court denied Plaintiffs' two motions for class certification to certify a radio class or

2  donning or doffing class, finding that Defendant did not have a common policy regarding these issues.

3      Summary judgment was granted for Defendant on Plaintiffs Clare and Washington's meal break

4  claims, as they were covered by On Duty Meal Break Agreements. Dkt. 195 16:24-25.

5      This Court ruled that Robbins and Green's rest break claims failed due to lack of evidence of

6  missed breaks. Dkt. 195 17:17-21.

7      This Court ruled that Plaintiffs' overtime claims were barred by valid collective bargaining

8  agreements. Dkt. 195 17:25-25. This Court ruled in Defendant's favor regarding unpaid wages for

9  working off-the-clock, and unpaid wages claims related to donning and doffing personal protective

10 equipment were dismissed. Dkt. 195 18:7-9; 23-26.

11     Further, this Court granted Defendant's Motion for Summary Judgment regarding waiting time

12 penalties, and it is unlikely that the Court's determination that Defendant's conduct was not willful

13 would be overturned on appeal. Dkt. 195 19:21-23. Setareh Decl. ¶ 41, fn 4.

14                    **d.    Additional Risks**

15     In addition to disputing the merits of Plaintiffs' claims at trial, Defendant aggressively

16 challenged Plaintiffs' case at the certification stage. Defendant believes that Plaintiffs could not prevail

17 at trial, while Plaintiffs believe the case was viable through to a trial. However, while Plaintiffs assert

18 that this is a viable case for trial, Plaintiffs realize that there are always significant risks associated with

19 trials, and those risks cannot be eliminated in this case. The risks associated with this matter include, but

20 are not limited to, the following:

21     (i)    The risk that Plaintiffs would not be able to prove liability for alleged failure to provide

22 compliant meal periods and rest breaks. For example, Plaintiffs alleged that Defendant did not maintain

23 accurate records of the start and end times for meal periods taken by employees, instead, Plaintiffs

24 alleged employees regularly worked through their meal periods (and rest breaks) in order to complete

25 their job duties within the timeframe allotted by Defendant. Defendant countered with proof that many

26 employees took their meal periods and rest breaks, and that any inquiry into why some employees might

27 have missed meal and rest breaks would necessarily require an individualized inquiry that would

28 prevent this issue from being resolved on a class and/or collective basis. Defendant states that it had

1    compliant meal and rest policies. Defendant also argued that employees had freedom to take breaks at

2    their convenience, stating that they had much down time.

3         (ii)    The risk that Plaintiffs would be unable to establish liability for alleged unpaid straight

4    time and overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014), *citing Dilts*

5    *v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014)

6    (dismissing certified off-the-clock claims based on proof at trial).   Defendant has contended, for

7    example, that Plaintiffs' allegations for unpaid wages are not subject to common proof since they are

8    based on Plaintiffs' allegation that employees worked through meal breaks.  Defendant stated that it had

9    policies prohibiting off-the-clock work and relied on employees to keep accurate time.

10        (iii)   The risk that Defendant's challenged employment policies and practices might not

11   ultimately support a class-wide liability finding, *see*, *Duran*, 59 Cal.4th at 14 & n. 28 (citing Court of

12   Appeal decisions favorable on class certification issue without expressing opinion as to ultimate

13   viability of proposition).  Plaintiffs here successfully certified two classes. Defendant likely would have

14   sought to decertify these classes.  Defendant contended, for example, that it did not have a purported

15   policy of not paying required compensation, but rather a policy of paying compensation and of requiring

16   employees to report any unpaid compensable time.  *See, e.g.*, *Morillion v. Royal Packing Co.*, 22 Cal.

17   4th 575, 585 (2000) (employer not required to pay employees for time spent performing work of which

18   the employer had no knowledge).

19        (iv)    For the same reasons, liability, damages recovery, and de-certification risks are

20   heightened given:  (1) the risk that uncertainties pertaining to the ultimate legality of Defendant's

21   policies and practices could preclude class-wide awards of statutory penalties under Labor Code section

22   226(e); (2) the risk that individual differences between settlement Class Members could be construed as

23   pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; and (3) the risk that class

24   or collective treatment could be deemed improper as to one or more claims via a motion to de-certify

25   except for settlement purposes.

26        (v)     The risk that lengthy appellate litigation could ensue as to both liability and certification

27   issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as

28   opposed to unpredictable litigation.  Setareh Decl. ¶ 40.

1   In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and

2   reasonable recovery for the Settlement Class Members.  The Settlement amount is, of course, a

3   compromise figure.  By necessity, it took into account risks related to liability, damages, class action de-

4   certification, and all the defenses asserted by the Defendant as to all such matters.  Moreover, each Class

5   Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have

6   claims that are greater than the benefits they can receive under this Settlement to pursue their own

7   claims. *Id.* ¶ 42.

8   The Settlement falls well within the range of possible approval.  To evaluate this criterion,

9   which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected

10  recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484

11  F.Supp.2d at 1080.  Following review of the payroll and timekeeping data provided by Defendant and

12  applicable law, Plaintiffs' counsel determined that the value of their Labor Code claims to be

13  approximately $17,255,416. Setareh Decl., ¶ 41. If the derivative Labor Code section 203 waiting time

14  penalties and section 226 inaccurate wage statement penalties are included (those are $4,634,100 and

15  $3,020,750) the potential exposure is $24,910,266. (*Id.*) However, as the Ninth Circuit has indicated,

16  only damages not penalties need be considered when assessing the fairness of a settlement because the

17  fairness inquiry looks to whether the class members were compensated for "past injuries". *Rodriguez v.*

18  *West Publishing Corp.,* 563 F.3d 948, 964 (2009.) Further Labor Code section 203 and 226 penalties

19  require a showing of willfulness, and Defendant would argue that any failure to pay meal or rest

20  premiums or other amounts owed was not willful. For example, in *Naranjo v. Spectrum Security*

21  *Services, Inc.,* 17 Cal.5th 1056, 1088 (2024) the California Supreme Court held that section 226

22  penalties like section 203 penalties, should not be awarded even if liability is established at trial, if the

23  employer presents defenses that were "reasonable, if ultimately unconvincing." This Court granted

24  Defendant's Motion for Summary Judgment regarding waiting time penalties. Dkt. 195 19:21-23.

25  Therefore, the settlement amount of $12,500,000 is approximately 72.44% of the potential

26  $17,255,416 Class-wide Labor Code damages estimated by Plaintiffs.  This is an excellent result, well

27  above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See*

28  *e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671,

*12-13 (N.D. Cal. Jun. 17, 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%].

The average estimated Settlement Share for each Class Member is **$4,410.76** ($7,718,833.33/ 1,750). This amount reflects a fair compromise well within the range of reasonableness.  Setareh Decl. ¶ 42.  Given the strong case that Defendant could bring to bear to challenge liability, this is not an inconsequential sum. *Id*. And, confirming the fundamental fairness of the Settlement, each Class Member will be compensated based on the number of Workweeks they worked during the Class Period. SA, § III 16.

### 2.    The Proposed Method of Distributing Relief to the Class is Effective

The settlement provides that Class Members will be mailed checks directly and will not need to submit a claim form. And for Class Members who do not cash their checks, the money will be sent to the State of California Unclaimed Property Fund.

### 3.    The Proposed Award of Attorney Fees is Fair

The Ninth Circuit "benchmark" for fees is 25% of the fund, but courts may award a higher percentage when merited. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002).  In appropriate cases, state and federal courts applying the percentage-of-recovery method frequently award 33- 1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 n.11 (2008).

Courts regularly apply a multiplier to the base lodestar to reflect the risks involved, the complexity of the litigation, the length of the case, and other relevant factors. (*See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases").

In addition to the evaluation of awards made in similar cases, the Court may consider (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiffs. *Id*. 1048-50.

The contemplated one-third fee award is extremely reasonable in light of the class benefiting from the substantial risk of the claims litigated, over 7 years of hard work, exceptional results, and

over $170,000 in out-of-pocket fees and expenses borne by the Plaintiffs' lawyers without any guarantees of ever recovering these sums.

Plaintiffs' Counsel have repeatedly shown their dedication to this case by tackling novel issues of law, devoting a substantial percentage of their resources, and committing to the long-term litigation of this action in the face of great opportunity costs. The novelty and challenges presented by a class and PAGA action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).

The second and third factors (i.e. "the risk of litigation"; and, the "skill required and the quality of the work", respectively) are largely intertwined. *In re Washington Public Power Supply Sys. Sec. Litig.,* 19 F.3d at 1301 n.10. Here, Class Counsel faced significant risk in pursuing this litigation that was only overcome by their skill and experience in the field of wage & hour class actions. *See* Setareh Decl., at ¶¶ 41-43; 56-59. Plaintiffs' Counsel clearly faced substantial risks associated with certifying and maintaining this class action. These numerous exceptional risks faced by Counsel, coupled with their deft skill in keeping this litigation on course towards trial until a settlement was reached, clearly justify the 33.3% award contemplated by the settlement agreement.

The fourth factor (*i.e.* "the contingent nature of the fee and the financial burden carried by the Plaintiffs) also clearly weighs in favor of the contemplated attorney fee 33.3% award. *In re Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997). Here, Class Counsel undertook all of the risks of this litigation on a contingent fee basis. Setareh Decl. ¶ 62; Hawkins Decl. ¶ 10. They also faced the risks involved in litigating this case for years and spending thousands of dollars in costs, without any guarantee of future pay or reimbursement.

In addition to these hard costs, Plaintiffs' Counsel committed many attorney hours to the action. This includes but is not limited to defending Plaintiffs' depositions, deposing Defendant's Rule 30(b)(6) designees and expert, propounding and responding to written discovery, interviewing percipient witnesses, obtaining declarations from percipient witnesses, reviewing documents produced by Defendant, working with Plaintiffs' experts, filing two motions for class certification,

opposing motions to dismiss, cross-motions for summary judgment, successfully certifying two classes, drafting mediation briefs and preparing extensively for two mediations. Setareh Decl. ¶ 60; Hawkins Decl. ¶ 5.

Additionally, the number of attorneys, paralegals, and staff necessary to litigate this action constituted a significant percentage of Plaintiffs' Counsel's respective firms' total workforce. See Setareh Decl. at ¶ 61. Again, all these important resources were willingly committed by Plaintiffs' Counsel knowing that they risked recovering nothing.

### 4. Any Agreement Required to be Identified Under Rule 23(e)Error! Bookmark not defined.(3)

Other than the Settlement Agreement, there are no such agreements. Setareh Decl. ¶ 49.

### D. Class Members Will Be Treated Equitably Relative to One Another

Rule 23(e)**Error! Bookmark not defined.**(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other." For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

Here, the amount of money each Class Member receives is directly proportional to the number of workweeks that Class Member worked during the Class Period. SA ¶ III 16. The allocation to the PAGA claim will be distributed pursuant to the California Labor Code, which mandates that 75% go to the California Labor and Workforce Development Agency ("LWDA"), and the remaining 25% go to the PAGA aggrieved employees. SA ¶ III 25. Pursuant to the terms of the Settlement Agreement, the 25% allocation to the PAGA Group Members will be distributed to them pro rata based on the number of pay periods each worked during the applicable PAGA period. SA ¶ III 17.

## VI. THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE
### A. Information About the Settlement
#### 1. Differences Between the Settlement Class and the Certified Class

On March 29, 2021, this Court entered an Order granting certification of two classes, the Auto-Deduct Class and the Rounding Class. Dkt. 131. The Rounding Class in the Motion for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 rounded their punch time." The Auto-Deduct Class in the Motion for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 did not require the precise recordation of start and end times of each meal break." *Id*.

The "Class" or "Class Members" in this settlement mean all current and former non-exempt or hourly paid employees who worked for Phillips 66 in California at any time during the Class Period. SA ¶ III 2. The Class Period means the period from November 27, 2013 through the date that Phillips 66 ceases operations at its Los Angeles Refinery or the date that is closest to without exceeding 500,000 Workweeks actually worked by Class Members during the Class Period, whichever is earlier. SA III 6.

The Settlement class is broader in that it includes all non-exempt or hourly paid employees who worked for Phillips 66 in California, whether or not they were not required to record meal times and whether or not their time was rounded. This is because Defendant seeks a global resolution to encompass all of Plaintiffs' claims, including those claims that were not certified.

In order to provide a global peace on the issues litigated in this case, the Parties agreed that the time period of the certified classes would be extended through the date that Phillips 66 ceases operations at its Los Angeles Refinery or the date that is closest to without exceeding 500,000 Workweeks actually worked by Class Members during the Class Period, whichever is earlier.

### 2.    Differences in the Claims to be Released and the Claims Certified

The Settlement Agreement releases claims "that were alleged or could have been alleged, based on any of the facts alleged in any of the pleadings that have been filed in the Action, and in any notice provided by the LWDA by any Class Representative." SA ¶ 29.

The Settlement Agreement releases all claims alleged in the operative complaint (including Cal. Lab. Code 201, 202, 203, 204, 215, 216, 218.6, 225, 226, 354, 408, 510, 512, 553, 558, 1174, 1175, 1194, 1197, 1198, 1199, 2802) and claims alleged in the PAGA letter (including Cal. Lab.

Code 210). To provide Defendants, global peace, the release also includes Cal. Lab. Code 200, 516, 2804, and 2810. *Id.*

The Settlement Agreement expressly releases FLSA claims, even though the pleadings do not assert an FLSA claim. *Id.* Under Ninth Circuit precedent, FLSA claims based on the same factual predicate as state law wage and hour claims are released even if there is no FLSA claim pleaded in the settled lawsuit. *Rangel v. PLS Check Cashers of California Inc.*, 899 F.3d 1106, 1111 (9th Cir. 2018).

### 3. The Class Recovery Under the Settlement

The class recovery under the Settlement is discussed in section III C-D *supra.*

### 4. Other Cases Affected by the Settlement

Defendant states that there are no other cases affected by the settlement. Setareh Decl. ¶ 50.

### 5. The Proposed Allocation for the Settlement Fund

The settlement fund allocation is described in section III. C. *supra.*

### 6. Claim Form

Class members will be sent checks and do not need to submit a form.

### 7. Reversion to Defendant

Not applicable. The settlement is non-reversionary. Uncashed checks will be sent to California's unclaimed property fund, which the class member will be able to claim it from. The settlement also provides for a reserve fund of $10,000 to deal with disputed claims. Any residue of the reserve fund will go to cy pres.

### B. Settlement Administration

The Parties selected Xpand Legal Consulting LLC ("Xpand") as the Settlement Administrator in this case. Plaintiffs obtained settlement administration quotes from 4 settlement administrators: (1) Xpand, (2) Phoenix Class Action Administration Solutions, (3) CPT Group Inc., and (4) Veritas. Setareh Decl.¶ 54. Xpand's bid was the most competitive. Xpand is experienced and has security procedures in place. Declaration of Jonathan Paul ¶ 2. Xpand has administered no cases with Class Counsel and has administered 2 cases with Baker and Hostetler LLP. *Id.* ¶¶ 4-5.

### C. Notice

The Notice of Settlement of PAGA and Class Action Suit is attached to the Settlement as Exhibit A. Consistent with section 3 of the Procedural Guidance, the Notice provides contact information for Class Counsel (Exhibit 2 p. 5); a website address for settlement class members to obtain further information and instructions on how to obtain further information on PACER (*Id.* at p. 6); the date and time of the final approval hearing (*Id.* at p. 4); and instructs class members to check the website or PACER to ensure the date and time of the final approval hearing have not changed. (*Id.*) The Notice also uses the proposed language suggested in the Procedural Guidance. *Id.* at 6.

**D.    Opt Outs**

The Notice advises class members that they can opt out by sending a written request to the administrator. It also advises them of the consequences of opting out, and sets forth information required for identification purposes including name, the last four digits of the social security number or full employee ID, and a signature. *Id.* at 3.

**E.    Objections**

The Notice advises class members of the deadline to submit objections and provides that objections are to be sent to the Court. *Id.* at pp. 3-4. The Notice contains the language suggested in the Procedural Guidance. *Id.* It also instructs class members to include their name, address, last four digits of the telephone number, a statement of the reasons for objecting and to sign and date the objection. *Id.*

**F.    Attorney Fees and Costs**

See discussion in section V C II *supra*.

**G.    Service Enhancements**

Plaintiffs seek Service Enhancements to each of the 4 Plaintiffs of $10,000 (totaling $40,000) for the extensive time and effort they contributed to this case, without which the $12,500,000.00 Settlement would not exist. Setareh Decl. ¶ 52; Dean Decl. ¶¶ 4-10; Green Decl. ¶¶ 3-11; Clare Decl. ¶¶ 4-10; Washington Decl. ¶¶ 4-10. An award of $10,000 to each named Plaintiff is reasonable in light of the fact that the average estimated settlement payment to settlement class members is $4,410.76. Plaintiffs were deposed in this matter. Robbins Decl. ¶ 7; Green Decl. ¶ 10;

Clare Decl. ¶ 7; Washington Decl. ¶ 7. Plaintiff Dean Robbins and Timothy Green responded to discovery requests. Robbins Decl. ¶ 7; Green Decl. ¶ 10. Plaintiff Dean Robbins attended the first mediation in person. Robbins Decl. ¶ 7.

//

### H.    Cy Pres

Pursuant to the Settlement Agreement, uncashed checks are to be sent to California's unclaimed property fund, which the class member will be able to claim it from. Any unused funds from the $10,000 Reserve Fund will go to the California State Bar Greg E. Knoll Justice Gap Fund or another appropriate 501(c)(3) non-profit agreed upon by the parties and approved by the Court.

### I.    Timeline

A proposed timeline for the Settlement is included in the Proposed Order filed concurrently herewith. SA ¶ 94.

### J.    Class Action Fairness Act (CAFA) and Similar Requirements

Defendant will comply with CAFA—under the parties' Agreement, the Settlement Administrator shall submit any required notice pursuant to CAFA. SA ¶ IX 86.  On the date of filing this motion, Class Counsel uploaded a copy of this motion and exhibits including the Settlement Agreement to the LWDA website. Setareh Decl. ¶ 67.

### K.    Comparable Outcomes

A comparable settlement to the instant one is *Frlekin v. Apple*, 2021 WL 6126961 (N.D. Cal. 2021), which involved wage and hour claims. However, that settlement occurred after the district court had granted summary judgment to the plaintiff class on liability, and the Ninth Circuit had affirmed that decision. The *Frlekin* settlement involved a total settlement fund of $29.9 million for 14,683 class members. *Id.* at *2. In *Frlekin*, the gross settlement amount per class member was $2,036 ($29.9 million / 14,683.) The gross settlement amount per class member in this settlement is $7,142.85 ($12.5 million / $1,750), which is more than three times higher than the gross settlement amount per class member in *Frlekin*.

## VII.    THE PAGA ALLOCATION IS PROPER

PAGA provides for a $100 per employee per pay period penalty for the "initial" violation and $200 per employee per pay period for "subsequent" violations. Cal. Lab. Code § 2699(f)(2).

Theoretically, PAGA penalties could be in excess of 54 million dollars. However, it is well-settled that a PAGA penalty award should be proportionate to the underlying damages. *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1214 (2008).

The Agreement provides for a PAGA allocation of $400,000, of which 75% will be paid to the LWDA out of the gross settlement amount, and the remaining 25% will be distributed to PAGA Group Members. (SA ¶ III 25).

Admittedly, the PAGA allocation is a small percentage of the possible exposure (.72% of what realistically might be awarded). However, Plaintiffs submit that it is permissible in this case because the settlement of the underlying wage and hour claims is robust, and that serves the deterrent purpose of the PAGA statute. *O'Connor v. Uber Technologies, Inc*., 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016).

Courts have routinely approved similar PAGA allocations. *Viceral v. Mistras Group, Inc.*, 2016 WL5907869 (N.D. Cal. 2016) (0.15%);  *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June 11, 2016) (1.3%).

This is because trial courts have broad discretion to reduce the amount of PAGA penalties if the award would be: "unjust, arbitrary and oppressive or confiscatory." Cal. Lab. Code § 2699(e)(2). The PAGA allocation should be approved.

## VIII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AND APPOINT PLAINTIFFS AND CLASS COUNSEL TO REPRESENT THEM

Where a class has been previously certified, the Court need not engage in a detailed certification analysis for purposes of settlement. *See e.g., Harris v. Vector Marketing*, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable.").

On March 29, 2021, this Court entered an Order granting certification of two classes, the Auto-Deduct Class and the Rounding Class. Dkt. 131. The Rounding Class in the Motion for Class

Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 rounded their punch time." The Auto-Deduct Class in the Motion for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 did not require the precise recordation of start and end times of each meal break." *Id.*

The instant Settlement Agreement incorporates both of these previously certified classes into a broader hourly employee class that encompasses those claims.

The Settlement updates the class period to encompass non-exempt workers employed by Defendant through the date that Phillips 66 ceases operations at its Los Angeles Refinery or the date that is closest to without exceeding 500,000 Workweeks actually worked by Class Members during the Class Period, whichever is earlier (versus the date of original certification). Because these previously-certified classes have not materially changed, the certification of the Rounding Class and Auto-Deduct Class should be affirmed for purposes of this settlement.

### 1.    Standard for Conditional Class Certification Upon Settlement

Parties seeking class certification for settlement purposes must still generally satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To maintain a class action under Rule 23(a), a plaintiff must demonstrate: (1) numerosity: the class is so numerous that joinder of all members is impracticable, (2) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class, (3) typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) commonality: there are questions of law or fact common to the class. In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action. Under Rule 23(b)(3), the plaintiff must prove: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." However, in the context of settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem supra* at 620.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

### 2.    Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable". *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008). 40 class members is sufficient for numerosity. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008). Here, the estimated count of approximately 1,750 Class Members satisfies the numerosity requirement.  Setareh Decl., ¶ 65.

### 3.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Here, just as with the previously certified claims, the parties agree that Plaintiffs and their counsel have no conflicts of interest with other class members and have and will prosecute the action vigorously on behalf of the class.

### 4.    Typicality

Rule 23(a) likewise requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, Plaintiffs' claims are similar to all other non-exempt employees as described in the class provided in the Settlement and Plaintiffs' claims are typical of such workers with the same common issues.  Setareh Decl., ¶ 44.

### 5.    Commonality

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common.  *Hanlon*, 150 F.3d at 1019.  Here, Plaintiffs' claims involve common questions of both fact and law regarding Defendant's alleged failure to abide by wage-and-hour law, such as: (1) did Defendant's rounding practices result in the underpayment of hours worked; and (2) do the attestations signed by employees when filling out timecards serve as evidence to rebut the *Donohue* presumption regarding auto-deductions? Setareh Decl., ¶¶ 45-46.

### 6.    Predominance and Superiority

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification for settlement purposes is proper under one of the three requirements of Rule 23(b).  Here, "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Setareh Decl., ¶ 48. For

settlement purposes common issues regarding the legality of Defendant's wage and hour practices predominate over any individualized issues. And, given the small size of any individual claims, class treatment is plainly superior to individual adjudication.

## IX.    CONCLUSION

The Settlement is an excellent one, arrived at with more than enough litigation and discovery for the parties to accurately value the claims. Preliminary approval should be granted.

DATED:  May 8, 2025                              **SETAREH LAW GROUP**

                                                 _/s/ Farrah Grant_____
                                                 SHAUN SETAREH
                                                 THOMAS SEGAL
                                                 FARRAH GRANT
                                                 Attorneys for Plaintiffs