**SETAREH LAW GROUP**
Shaun Setareh, Esq. (SBN 204514)
Thomas Segal, Esq. (SBN 222791)
Farrah Grant Esq. (SBN 293898)
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com
*Attorneys for Plaintiffs and the Certified Class*

ADDITIONAL COUNSEL ON THE NEXT PAGE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEAN A. ROBBINS and TIMOTHY GREEN, on behalf of themselves, all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PHILLIPS 66 COMPANY, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | CASE No. 3:18-cv-00292-RS<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declarations of Shaun Setareh, James Hawkins and Jonathan Paul in support thereof*]<br><br>Date: August 13, 2026<br>Time: 1:30 p.m.<br>Courtroom:12, 19th Floor<br><br>Action Removed: January 12, 2018<br>Action Filed: November 27, 2017 |

**JAMES HAWKINS APLC**
James Ross Hawkins, Esq. (SBN 192925)
Gregory Mauro, Esq. (SBN 222239)
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 387-7200
Fax: (949) 387-6676
james@jameshawkinsaplc.com
greg@jameshawkinsaplc.com
*Attorneys for Plaintiffs and the Certified Class*

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on August 13, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 12 of this Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Plaintiffs Dean A. Robbins, Timothy Green, Keith Washington, and Ian Clare, on behalf of themselves and all others similarly situated and the general public ("Plaintiffs"), seek an award of attorney fees in the amount of $4,1666,666.66 (one third of the settlement amount of $12.5 million), litigation expenses in the amount actually incurred which is $204,088.66, and class representative service awards in the amount of $10,000 for each named plaintiff.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the declarations of Shaun Setareh and James Hawkins, the declaration of Jonathan Paul, and such further evidence and argument as may be presented.

DATED: June 8, 2026

SETAREH LAW GROUP

*_/s/ Shaun Setareh_*
SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
Attorneys for Plaintiffs

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. SUMMARY OF CLASS COUNSEL'S WORK ON THE CASE ..... 1

A. Class Counsel Files Complaints and Amended/ Consolidated Complaints ..... 1

B. Class Counsel Defeats Motion to Dismiss, Obtains Class Certification, and Defeats Summary Judgment ..... 3

C. Class Counsel Conducts Extensive Discovery ..... 4

D. Class Counsel Obtains the Instant Settlement ..... 5

E. Class Counsel Obtains Preliminary Approval ..... 5

III. RELIEF PROVIDED TO THE CLASS BY THE SETTLEMENT ..... 5

A. Maximum Settlement Amount, Attorney Fees And Costs, Class Representative Service Awards And Paga Allocation ..... 5

B. Disposition Of Uncashed Checks And Reserve Fund ..... 6

IV. SUMMARY OF NOTICE PROCESS AND CLASS RESPONSE ..... 7

V. THE REQUEST FOR ATTORNEY FEES SHOULD BE GRANTED ..... 8

A. The Fee Is Reasonable Under the *Vizcaino* Factors ..... 8

1) The Results Achieved for the Class are Exceptional. ..... 9

2) The Risks Class Counsel Undertook in Litigating the Case. ..... 9

3) The Range of Fee Awards in Cases of Comparable Size ..... 11

4) The Burdens Class Counsel Took on Warrant the Requested Fee Award. ..... 11

5) The Skill Required, the Complexity of the Case, and the Quality of Work. ..... 12

6) Benefits Conferred Beyond the Settlement Fund. ..... 13

B. The Fee Is Reasonable Under the Percentage of Recovery Method ..... 13

C. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Award ..... 15

D. Preliminary Responses of the Class to the Settlement ..... 18

VI. THE REQUEST FOR LITIGATION COSTS SHOULD BE GRANTED ..... 19

VII. THE CLASS REPRESENTATIVE SERVICE AWARDS SHOULD BE GRANTED ..... 19

VIII. CONCLUSION ........................................................................................................20

# TABLE OF AUTHORITIES

Cases


*Alamanzar v. Home Depot USA, Inc.*,
2024 WL 36175 .... 20

*Arredondo v. Delano Farms Co.*,
No. 1:09-CV-01247-MJS, 2017 WL 4340204 (E.D. Cal. Sept. 29, 2017) .... 8

*Asare v. Change Grp. New York, Inc.*,
No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .... 17

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. 2017) .... 11

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) .... 17

*Bernstein v. Virgin America, Inc*,
2023 WL 7284158 fn 1 (N.D. Cal. 2023) .... 20

*Boeing Company v. Van Gemert*,
444 U.S. 472 (1980) .... 13

*Boone v. Amazon.com Services, LLC*,
2024 WL 4172426 (E.D. Cal. 2024) .... 14

*Bowerman v. Field Asset Services, Inc.*,
60 F.4th 459 (9th Cir. 2023) .... 10

*Brown v. Tetra Tech, Inc.*,
2025 WL 1400295 (E.D. Cal. 2025) .... 20

*Carlin v. Dairy America, Inc.*,
380 F.Supp.3d 998 (E.D. Cal. 2019) .... 12

*Chavez v. Netflix, Inc.*,
162 Cal. App. 4th 43 (2008) .... 14

*Churchill Village LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir.2004) .... 19

*Craft*,
624 F.Supp.2d .... 17

*Credit Default Swaps*,
2016 WL 2731524 .... 17

*Donohue v. AMN Services, LLC*,
11 Cal. 5th 58 (2021) .... 10

*Gutierrez v. Wells Fargo Bank, N.A.,* No. 07-cv-05923-WHA, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) .... 16

*Haro v. Walmart, Inc.*,
2025 WL 73109 (E.D. Cal. 2025) .... 14

*Harrison v. Bank of America, Corp.*,
2021 WL 5507175 (N.D. Cal. 2021) .... 15

Hefler v. Wells Fargo & Co.,
Hefler v. Wells Fargo & Co., No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *39 (N.D. Cal. Dec. 18, 2018) .... 16

*In re Apple Inc. Performance Device Litig.*,
2021 WL 1022866 (N.D. Cal. 2021) .... 13

*In re Beverly Hills Fire Litig.*,
639 F.Supp. 915 (E.D.Ky.1986) .... 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .... 9, 16

*In re Heritage Bond,*
*Litiq., No. 02–ML–1475–DT, 2005 WL 1594389 (C.D.Cal. June 10, 2005)* .... 18, 19

*In re Heritage Bond*,
2005 WL 1594403 (C.D. Cal. 2005) .... 10

*In re LendingClub Sec. Litig.*,
No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) .......... 19

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 14, 20

*In re Nat'l Collegiate Athletic Assn. etc. Antitrust Litig*.,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .......... 10, 17

*In re Nexus GP Prods. Liability Litig*.,
2019 WL 6622842 (N.D. Cal. 2019) .......... 13

*In re Omnivision Techs, Inc.*,
559 F.Supp.2d 1036 (N.D. Cal. 2008) .......... passim

*In re Optical Disk Drive Prods. Antitrust Litig*.,
959 F.3d 922 (9th Cir. 2020) .......... 8

*In re Pacific Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995) .......... 14

*In re Rite Aid Corp. Sec. Litig.*,
362 F.Supp.2d 587 (E.D. Pa. 2005) .......... 17

*In re RJR Nabisco, Inc. Sec. Litig.*, [1992 Transfer Binder],
Fed. Sec. L.Rep. (CCH) ¶ 96,984 (S.D.N.Y.1992) .......... 17

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999) .......... 17

In *re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-cv-2672-CRB, 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. Mar. 17, 2017) .......... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig*.,
19 F.3d 1291 (9th Cir. 1994) .......... 12, 13

*In re Wells Fargo & Co. Shareholder Deriv. Litig.*, __ Fed. App'x __,
2021 WL 1511501 (9th Cir. Apr. 16, 2021) .......... 17

*Jiminez v. Allstate Ins. Co*.,
2021 WL 4316961 (C.D. Cal. 2021) .......... 20

*Kang v. Wells Fargo Bank, N.A.*,
No. 17-cv-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) .......... 14, 19

*Ketchum v. Moses*,
24 Cal.4th 1122 (2001) .......... 12

*Laguna v. Coverall North America Corp*.,
753 F.3d 918 (9th Cir. 2014) .......... 14

*Lowery v. Rhapsody International, Inc.*,
75 F.4th 985 (9th Cir. 2023) .......... 9

*Mangold v. Calif. Public Utilities Comm'n*,
67 F.3d 1470 (9th Cir. 1995) .......... 14

*McGrath v. Wyndham Resort Development Corporation*,
2018 WL 637858 (S.D. Cal. 2018) .......... 11

*Mills v. Auto Lite Co.*,
396 U.S. 375 (1970) .......... 13

*Nachsin v. AOL LLC*,
663 F.3d 1034 (9th Cir. 2011) .......... 7

*NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. .......... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D.Cal.2004) .......... 18

*Nichols v. SmithKline Beecham Corp*.,
No. CIV.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) .......... 19

*Nucci v. Rite Aid Corporation*,
2022 WL 1693711 (N.D. Cal. 2022) .......... 14

*Paul, Johnson, Alston, & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ........ 14

*Rodriguez v. Nike Retail Services, Inc.*,
2022 WL 254349 (N.D. Cal. 2022) ........ 8, 14

*Rodriguez v. West Publishing*,
563 F.3d 948 (9th Cir. 2009) ........ 9

*Senne v. Kansas City Royals Baseball Corp.*,
2023 WL 2699972 (N.D. Cal. 2023) ........ 11

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 ........ 14

*Steiner v. Am. Broadcasting Co.*,
248 Fed. App'x 780 (9th Cir. 2007) ........ 17

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
2005 WL 1213926 (E.D. Pa. May 19, 2005) ........ 17

*Suarez v. Bank of America, N.A.*,
2024 WL 150721 (N.D. Cal. 2024) ........ 14, 20

*Superior Consulting Servs., Inc. v. Steeves-Kiss,* No. 17-cv-6059-EMC, 2018 U.S. Dist. LEXIS 80261, at *13 (N.D. Cal. May 11, 2018) ........ 16

*Taylor v. Shippers Transport Express, Inc.*,
2015 WL 12658458 ........ 11

*Villafan v. Broadspectrum Downstream Services, Inc.*,
2021 WL 6332128 (N.D. Cal. 2021.) ........ 14, 20

*Vizcaino v. Microsoft Corp.*,
142 F.Supp.2d 1299 (W.D. Wa. 2001) ........ 10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........ passim

*Walsh v. CorePower Yoga LLC*,
2017 WL 4390168 (N.D. Cal 2017) ... 20

*Xcel Energy*,
364 F.Supp.2d ... 17

*Zepeda v. PayPal Inc.*,
2017 WL 1113293 (N.D. Cal. 2017) ... 13

Statutes

28 U.S.C. § 1332(d) ... 2

Rules

Fed. R. Civ. P. 23(h) ... 19

## I. INTRODUCTION

After years of litigation, including extensive discovery and motion practice, the parties in this case reached a settlement of disputed wage claims for $12.5 million. The settlement is non-reversionary, no class member will have to make a claim, instead checks will be mailed directly to them. There are 1835 class members meaning that on a gross basis, class members will receive on average $6,811.98. The settlement amount is 82.5% of the potential Labor Code damages at issue, and 54.81% of the total potential class recovery including penalties. Any uncashed checks will be sent to the State Controller to be held for the class member.

Further, this result occurred after years of work including motions for class certification, cross-motions for summary judgment, percipient and expert witness depositions, depositions of all four named plaintiffs, Rule 30(b)(6) depositions, and substantial expert work to analyze Phillips 66's timekeeping data.

The case also involved substantial risk. One of the certified claims is that Phillips 66 violated the law by rounding time punches. The legality of that practice is before the California Supreme Court. The other certified claim is that Phillips 66 automatically deducted meal periods whether they were taken or not. For this claim, the Court in denying the cross-motions for summary judgment found a triable issue of fact as to whether Phillips 66's timecard attestations defeat this claim. And, this claim would almost certainly have resulted in a battle of the experts at any trial, including survey evidence.

In light of the excellent result, the risk of litigation, and the significant amount of work done, Plaintiffs request by way of this motion that the Court award one third of the settlement amount in fees and that the four named Plaintiffs be awarded service payments of $10,000 each. Plaintiffs also request reimbursement of litigation costs actually incurred in the amount of $204,088.66 which includes, among other things, substantial expert witness costs, mediator fees, travel expenses, and the cost of sending notice to the class.

## II. SUMMARY OF CLASS COUNSEL'S WORK ON THE CASE

### A. Class Counsel Files Complaints and Amended/ Consolidated Complaints

On November 27, 2017, Plaintiff Dean Robbins filed a class action against Phillips 66 in the San Francisco County Superior Court, captioned *Robbins v. Phillips 66 Company*, Case No. CGC-17-562672, on behalf of himself and all others similarly situated asserting wage and hour causes of action. Dkt. 1.

On January 31, 2018, Plaintiff Robbins filed his First Amended Complaint adding a cause of action for civil penalties under California's Private Attorney General Act ("PAGA"). Dkt. 15.

On January 12, 2018, Defendant removed the action to this Court under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d). Dkt. 1.

On July 23, 2018, Plaintiff Timothy Green filed his wage and hour class action against Phillips 66 in the Los Angeles County Superior Court, entitled *Timothy Green v. Phillips 66 Company, et al.,* Case No. BC713777. On October 22, 209, Defendant removed the *Green* action to the Central District. On March 22, 2019, the parties' joint stipulation to transfer the case from the Central District to the Northern District was granted. On April 16, 2019, the *Green* and *Robbins* cases were deemed related actions. Setareh Decl. ¶ 8.

Plaintiffs Robbins and Green filed a Consolidated Complaint on August 16, 2019. Dkt. 79.

On August 12, 2020, Plaintiffs filed a motion for leave to file the First Amended Consolidated Complaint, in part to add Keith Washinton and Ian Clare as named Plaintiffs. Dkt. 102. The motion was fully briefed and granted. Dkt. 113. Plaintiffs' operative Complaint asserts seven causes of action: (1) failure to provide meal breaks; (2) failure to provide rest breaks; (3) failure to pay hourly and overtime wages; (4) failure to provide accurate wage statements; (5) failure to timely pay all final wages; (6) unfair competition; and (7) PAGA. Dkt. 79.

Plaintiffs alleged that Defendant sometimes failed to provide or record meal breaks, and instead automatically deducted a half-hour from each employee's time worked, whether a meal break was provided or not. Plaintiffs additionally alleged that sometimes meal breaks were not provided until after the fifth hour of work. Plaintiffs asserted that Defendant sometimes failed to provide compliant rest periods and sometimes only allowed rest breaks to be taken at the end of a shift. Moreover, Plaintiffs alleged that Defendant did not pay for off-the-clock work performed, such as time spent donning and doffing personal protective equipment and time spent performing shift

turnover duties before their shift began. Plaintiffs alleged that Defendant had a policy requiring employees to maintain their radio on their person at all times and respond to calls that come in, which would result in interrupted breaks. Finally, Plaintiffs alleged that Defendant underpaid the class because of rounded time records. *Id*.; Setareh Decl. ¶ 11.

Phillips 66 denies Plaintiffs' claims, and asserts that, during all relevant times, Class Members were properly paid for all hours worked, received all wages to which they were entitled, and provided the opportunity to take all meal and rest breaks, in accordance with California law. Phillips 66 contends the Plaintiffs' claims are not suitable for class or representative treatment and are not manageable at trial. Settlement II B; Setareh Decl. ¶ 12.

**B. Class Counsel Defeats Motion to Dismiss, Obtains Class Certification, and Defeats Summary Judgment**

This case has been aggressively litigated by both sides for over 7 years. On January 19, 2018, Phillips 66 filed its first Motion to Dismiss. Dkt.7. On January 31, 2018, Plaintiff filed his First Amended Complaint. Dkt. 15. This Court subsequently denied Phillips 66's Motion to Dismiss as moot. Dkt. 16.

On February 14, 2018, Phillips 66 re-filed its Motion to Dismiss. Dkt. 17. On February 28, 2018, Plaintiff filed an opposition to the Motion to Dismiss. Dkt. 19. On April 12, 2018, the Court entered an Order denying the Motion to Dismiss. Dkt. 22.

On August 8, 2019, this Court entered an Order consolidating this case with *Green v. Phillips 66, Inc.*, Northern District of California Case No. 3:19-cv-01558-RS. Dkt. 78.

On October 19, 2020, Plaintiffs filed their first motion for class certification. Dkt. 111. Plaintiffs moved to certify six sub-classes rooted in Phillips 66's alleged failure to provide compliant meal and rest breaks, to compensate employees for donning and doffing personal protective equipment, to record the start and end time of meal breaks actually taken, and its policy to round time worked. On March 29, 2021, this Court entered an Order granting certification of two classes, the Auto-Deduct Class and the Rounding Class. Dkt. 131. The Rounding Class in the Motion for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 rounded their punch time." The Auto-Deduct Class in the Motion

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. SUMMARY OF CLASS COUNSEL'S WORK ON THE CASE ..... 1

- A. Class Counsel Files Complaints and Amended/ Consolidated Complaints ..... 1
- B. Class Counsel Defeats Motion to Dismiss, Obtains Class Certification, and Defeats Summary Judgment ..... 3
- C. Class Counsel Conducts Extensive Discovery ..... 4
- D. Class Counsel Obtains the Instant Settlement ..... 5
- E. Class Counsel Obtains Preliminary Approval ..... 5

III. RELIEF PROVIDED TO THE CLASS BY THE SETTLEMENT ..... 5

- A. Maximum Settlement Amount, Attorney Fees And Costs, Class Representative Service Awards And Paga Allocation ..... 5
- B. Disposition Of Uncashed Checks And Reserve Fund ..... 6

IV. SUMMARY OF NOTICE PROCESS AND CLASS RESPONSE ..... 7

V. THE REQUEST FOR ATTORNEY FEES SHOULD BE GRANTED ..... 8

- A. The Fee Is Reasonable Under the *Vizcaino* Factors ..... 8
  - 1) The Results Achieved for the Class are Exceptional. ..... 9
  - 2) The Risks Class Counsel Undertook in Litigating the Case ..... 9
  - 3) The Range of Fee Awards in Cases of Comparable Size ..... 11
  - 4) The Burdens Class Counsel Took on Warrant the Requested Fee Award. ..... 11
  - 5) The Skill Required, the Complexity of the Case, and the Quality of Work. ..... 12
  - 6) Benefits Conferred Beyond the Settlement Fund. ..... 13
- B. The Fee Is Reasonable Under the Percentage of Recovery Method ..... 13
- C. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Award ..... 15
- D. Preliminary Responses of the Class to the Settlement ..... 18

VI. THE REQUEST FOR LITIGATION COSTS SHOULD BE GRANTED ..... 19

VII. THE CLASS REPRESENTATIVE SERVICE AWARDS SHOULD BE GRANTED ..... 19

VIII. CONCLUSION ..........20

# TABLE OF AUTHORITIES

Cases

*Alamanzar v. Home Depot USA, Inc.*,
2024 WL 36175 .......... 20

*Arredondo v. Delano Farms Co.*,
No. 1:09-CV-01247-MJS, 2017 WL 4340204 (E.D. Cal. Sept. 29, 2017) .......... 8

*Asare v. Change Grp. New York, Inc.*,
No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .......... 17

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. 2017) .......... 11

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) .......... 17

*Bernstein v. Virgin America, Inc*,
2023 WL 7284158 fn 1 (N.D. Cal. 2023) .......... 20

*Boeing Company v. Van Gemert*,
444 U.S. 472 (1980) .......... 13

*Boone v. Amazon.com Services, LLC*,
2024 WL 4172426 (E.D. Cal. 2024) .......... 14

*Bowerman v. Field Asset Services, Inc.*,
60 F.4th 459 (9th Cir. 2023) .......... 10

*Brown v. Tetra Tech, Inc.*,
2025 WL 1400295 (E.D. Cal. 2025) .......... 20

*Carlin v. Dairy America, Inc.*,
380 F.Supp.3d 998 (E.D. Cal. 2019) .......... 12

*Chavez v. Netflix, Inc.*,
162 Cal. App. 4th 43 (2008) .......... 14

*Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir.2004) ........ 19

*Craft*, 624 F.Supp.2d ........ 17

*Credit Default Swaps*, 2016 WL 2731524 ........ 17

*Donohue v. AMN Services, LLC*, 11 Cal. 5th 58 (2021) ........ 10

*Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923-WHA, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) ........ 16

*Haro v. Walmart, Inc.*, 2025 WL 73109 (E.D. Cal. 2025) ........ 14

*Harrison v. Bank of America, Corp.*, 2021 WL 5507175 (N.D. Cal. 2021) ........ 15

Hefler v. Wells Fargo & Co., Hefler v. Wells Fargo & Co., No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *39 (N.D. Cal. Dec. 18, 2018) ........ 16

*In re Apple Inc. Performance Device Litig.*, 2021 WL 1022866 (N.D. Cal. 2021) ........ 13

*In re Beverly Hills Fire Litig.*, 639 F.Supp. 915 (E.D.Ky.1986) ........ 17

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........ 9, 16

*In re Heritage Bond*, *Litiq., No. 02–ML–1475–DT, 2005 WL 1594389 (C.D.Cal. June 10, 2005)* ........ 18, 19

*In re Heritage Bond*, 2005 WL 1594403 (C.D. Cal. 2005) ........ 10

*In re LendingClub Sec. Litig.*,
No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) ............................ 19

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................................... 14, 20

*In re Nat'l Collegiate Athletic Assn. etc. Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ......................................................... 10, 17

*In re Nexus GP Prods. Liability Litig.*,
2019 WL 6622842 (N.D. Cal. 2019)........................................................................ 13

*In re Omnivision Techs, Inc.*,
559 F.Supp.2d 1036 (N.D. Cal. 2008)..........................................................passim

*In re Optical Disk Drive Prods. Antitrust Litig.*,
959 F.3d 922 (9th Cir. 2020) ............................................................................... 8

*In re Pacific Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995) ................................................................................ 14

*In re Rite Aid Corp. Sec. Litig.*,
362 F.Supp.2d 587 (E.D. Pa. 2005)........................................................................ 17

*In re RJR Nabisco, Inc. Sec. Litig.*, [1992 Transfer Binder],
Fed. Sec. L.Rep. (CCH) ¶ 96,984 (S.D.N.Y.1992) ................................................... 17

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)........................................................................ 17

In *re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-cv-2672-
CRB, 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. Mar. 17, 2017) .......................... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ........................................................................... 12, 13

*In re Wells Fargo & Co. Shareholder Deriv. Litig.*, __ Fed. App'x __,
2021 WL 1511501 (9th Cir. Apr. 16, 2021)............................................................... 17

*Jiminez v. Allstate Ins. Co.*,
2021 WL 4316961 (C.D. Cal. 2021) ........ 20

*Kang v. Wells Fargo Bank, N.A.*,
No. 17-cv-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ........ 14, 19

*Ketchum v. Moses*,
24 Cal.4th 1122 (2001) ........ 12

*Laguna v. Coverall North America Corp.*,
753 F.3d 918 (9th Cir. 2014) ........ 14

*Lowery v. Rhapsody International, Inc.*,
75 F.4th 985 (9th Cir. 2023) ........ 9

*Mangold v. Calif. Public Utilities Comm'n*,
67 F.3d 1470 (9th Cir. 1995) ........ 14

*McGrath v. Wyndham Resort Development Corporation*,
2018 WL 637858 (S.D. Cal. 2018) ........ 11

*Mills v. Auto Lite Co.*,
396 U.S. 375 (1970) ........ 13

*Nachsin v. AOL LLC*,
663 F.3d 1034 (9th Cir. 2011) ........ 7

*NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. ........ 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D.Cal.2004) ........ 18

*Nichols v. SmithKline Beecham Corp.*,
No. CIV.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ........ 19

*Nucci v. Rite Aid Corporation*,
2022 WL 1693711 (N.D. Cal. 2022) ........ 14

*Paul, Johnson, Alston, & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ........................................................................................ 14

*Rodriguez v. Nike Retail Services, Inc.*,
2022 WL 254349 (N.D. Cal. 2022) .................................................................................. 8, 14

*Rodriguez v. West Publishing*,
563 F.3d 948 (9th Cir. 2009) ............................................................................................ 9

*Senne v. Kansas City Royals Baseball Corp.*,
2023 WL 2699972 (N.D. Cal. 2023) ................................................................................ 11

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 ............................................................................................................... 14

*Steiner v. Am. Broadcasting Co.*,
248 Fed. App'x 780 (9th Cir. 2007) ................................................................................ 17

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
2005 WL 1213926 (E.D. Pa. May 19, 2005) .................................................................... 17

*Suarez v. Bank of America, N.A.*,
2024 WL 150721 (N.D. Cal. 2024) ................................................................................ 14, 20

*Superior Consulting Servs., Inc. v. Steeves-Kiss,* No. 17-cv-6059-EMC, 2018 U.S. Dist. LEXIS
80261, at *13 (N.D. Cal. May 11, 2018) ......................................................................... 16

*Taylor v. Shippers Transport Express, Inc.*,
2015 WL 12658458 ........................................................................................................ 11

*Villafan v. Broadspectrum Downstream Services, Inc.*,
2021 WL 6332128 (N.D. Cal. 2021.) ............................................................................. 14, 20

*Vizcaino v. Microsoft Corp.*,
142 F.Supp.2d 1299 (W.D. Wa. 2001) ............................................................................ 10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................................................passim

*Walsh v. CorePower Yoga LLC*,
2017 WL 4390168 (N.D. Cal 2017) ........ 20

*Xcel Energy*,
364 F.Supp.2d ........ 17

*Zepeda v. PayPal Inc.*,
2017 WL 1113293 (N.D. Cal. 2017) ........ 13

Statutes

28 U.S.C. § 1332(d) ........ 2

Rules

Fed. R. Civ. P. 23(h) ........ 19

## I. INTRODUCTION

After years of litigation, including extensive discovery and motion practice, the parties in this case reached a settlement of disputed wage claims for $12.5 million. The settlement is non-reversionary, no class member will have to make a claim, instead checks will be mailed directly to them. There are 1835 class members meaning that on a gross basis, class members will receive on average $6,811.98. The settlement amount is 82.5% of the potential Labor Code damages at issue, and 54.81% of the total potential class recovery including penalties. Any uncashed checks will be sent to the State Controller to be held for the class member.

Further, this result occurred after years of work including motions for class certification, cross-motions for summary judgment, percipient and expert witness depositions, depositions of all four named plaintiffs, Rule 30(b)(6) depositions, and substantial expert work to analyze Phillips 66's timekeeping data.

The case also involved substantial risk. One of the certified claims is that Phillips 66 violated the law by rounding time punches. The legality of that practice is before the California Supreme Court. The other certified claim is that Phillips 66 automatically deducted meal periods whether they were taken or not. For this claim, the Court in denying the cross-motions for summary judgment found a triable issue of fact as to whether Phillips 66's timecard attestations defeat this claim. And, this claim would almost certainly have resulted in a battle of the experts at any trial, including survey evidence.

In light of the excellent result, the risk of litigation, and the significant amount of work done, Plaintiffs request by way of this motion that the Court award one third of the settlement amount in fees and that the four named Plaintiffs be awarded service payments of $10,000 each. Plaintiffs also request reimbursement of litigation costs actually incurred in the amount of $204,088.66 which includes, among other things, substantial expert witness costs, mediator fees, travel expenses, and the cost of sending notice to the class.

## II. SUMMARY OF CLASS COUNSEL'S WORK ON THE CASE

### A. Class Counsel Files Complaints and Amended/ Consolidated Complaints

On November 27, 2017, Plaintiff Dean Robbins filed a class action against Phillips 66 in the San Francisco County Superior Court, captioned *Robbins v. Phillips 66 Company*, Case No. CGC-17-562672, on behalf of himself and all others similarly situated asserting wage and hour causes of action. Dkt. 1.

On January 31, 2018, Plaintiff Robbins filed his First Amended Complaint adding a cause of action for civil penalties under California's Private Attorney General Act ("PAGA"). Dkt. 15.

On January 12, 2018, Defendant removed the action to this Court under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d). Dkt. 1.

On July 23, 2018, Plaintiff Timothy Green filed his wage and hour class action against Phillips 66 in the Los Angeles County Superior Court, entitled *Timothy Green v. Phillips 66 Company, et al.,* Case No. BC713777. On October 22, 209, Defendant removed the *Green* action to the Central District. On March 22, 2019, the parties' joint stipulation to transfer the case from the Central District to the Northern District was granted. On April 16, 2019, the *Green* and *Robbins* cases were deemed related actions. Setareh Decl. ¶ 8.

Plaintiffs Robbins and Green filed a Consolidated Complaint on August 16, 2019. Dkt. 79.

On August 12, 2020, Plaintiffs filed a motion for leave to file the First Amended Consolidated Complaint, in part to add Keith Washinton and Ian Clare as named Plaintiffs. Dkt. 102. The motion was fully briefed and granted. Dkt. 113. Plaintiffs' operative Complaint asserts seven causes of action: (1) failure to provide meal breaks; (2) failure to provide rest breaks; (3) failure to pay hourly and overtime wages; (4) failure to provide accurate wage statements; (5) failure to timely pay all final wages; (6) unfair competition; and (7) PAGA. Dkt. 79.

Plaintiffs alleged that Defendant sometimes failed to provide or record meal breaks, and instead automatically deducted a half-hour from each employee's time worked, whether a meal break was provided or not. Plaintiffs additionally alleged that sometimes meal breaks were not provided until after the fifth hour of work. Plaintiffs asserted that Defendant sometimes failed to provide compliant rest periods and sometimes only allowed rest breaks to be taken at the end of a shift. Moreover, Plaintiffs alleged that Defendant did not pay for off-the-clock work performed, such as time spent donning and doffing personal protective equipment and time spent performing shift

turnover duties before their shift began. Plaintiffs alleged that Defendant had a policy requiring employees to maintain their radio on their person at all times and respond to calls that come in, which would result in interrupted breaks. Finally, Plaintiffs alleged that Defendant underpaid the class because of rounded time records. *Id*.; Setareh Decl. ¶ 11.

Phillips 66 denies Plaintiffs' claims, and asserts that, during all relevant times, Class Members were properly paid for all hours worked, received all wages to which they were entitled, and provided the opportunity to take all meal and rest breaks, in accordance with California law. Phillips 66 contends the Plaintiffs' claims are not suitable for class or representative treatment and are not manageable at trial. Settlement II B; Setareh Decl. ¶ 12.

### B. Class Counsel Defeats Motion to Dismiss, Obtains Class Certification, and Defeats Summary Judgment

This case has been aggressively litigated by both sides for over 7 years. On January 19, 2018, Phillips 66 filed its first Motion to Dismiss. Dkt.7. On January 31, 2018, Plaintiff filed his First Amended Complaint. Dkt. 15. This Court subsequently denied Phillips 66's Motion to Dismiss as moot. Dkt. 16.

On February 14, 2018, Phillips 66 re-filed its Motion to Dismiss. Dkt. 17. On February 28, 2018, Plaintiff filed an opposition to the Motion to Dismiss. Dkt. 19. On April 12, 2018, the Court entered an Order denying the Motion to Dismiss. Dkt. 22.

On August 8, 2019, this Court entered an Order consolidating this case with *Green v. Phillips 66, Inc.*, Northern District of California Case No. 3:19-cv-01558-RS. Dkt. 78.

On October 19, 2020, Plaintiffs filed their first motion for class certification. Dkt. 111. Plaintiffs moved to certify six sub-classes rooted in Phillips 66's alleged failure to provide compliant meal and rest breaks, to compensate employees for donning and doffing personal protective equipment, to record the start and end time of meal breaks actually taken, and its policy to round time worked. On March 29, 2021, this Court entered an Order granting certification of two classes, the Auto-Deduct Class and the Rounding Class. Dkt. 131. The Rounding Class in the Motion for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 rounded their punch time." The Auto-Deduct Class in the Motion

for Class Certification was defined as "all non-exempt hourly California employees from November 17, 2013 to present for whom Phillips 66 did not require the precise recordation of start and end times of each meal break." *Id*. Plaintiffs' request to certify a class for 1) Radio Rest Breaks, 2) Radio Meal Breaks, and 3) Donning and Doffing were denied. *Id*. In its order granting class certification, the Court notes that "this business comprises some 1,400 non-exempt (e.g. hourly) employees, working at 17 Phillips facilities." *Id*.

On June 17, 2021, Plaintiffs attempted to renew their Motion to Certify the denied sub-classes with geographically narrower sub-classes. Dkt. 132. Plaintniff's second Motion for Class Certification was denied in its entirety. Dkt. 160.

The administrator sent out class notice on June 17, 2022 and the opt out period expired on August 16, 2022. Settlement IIA(h).

In January 2024, the Parties filed cross-motions for summary judgment. Dkts. 176, 180. On June 14, 2024, the Court issued its Order denying Plaintiffs' motion in its entirety and granting in part and denying in part Phillips 66's motion. Dkt. 195.

**C. Class Counsel Conducts Extensive Discovery**

The Parties engaged in extensive fact discovery, including raising discovery disputes with the Court and depositions. Plaintiff submitted a letter brief regarding discovery disputes on November 8, 2018. Dkt. 35. The Parties submitted a joint letter brief regarding discovery disputes on December 6, 2018. Dkt. 43. The Parties participated in a discovery hearing with Magistrate Judge Thomas S. Hixson on December 14, 2018, which resulted in a discovery order compelling the production of class contact information and class data. Dkt. 49.

Plaintiffs obtained class contact information, electronic timekeeping and payroll data, and a sampling of paper timekeeping records, and relevant policies and practices pertaining to the claims in the case. Setareh Decl. ¶ 23. In total, over 150,000 pages of documents and electronic records were produced by Defendant. Due to the complexity of Phillips 66's records, many of which were handwritten timesheets, Plaintiffs were required to retain multiple different experts including Candice Rosevear of Peregrine Economics who is a Kronos expert, David Breshears who is an accounting expert, and Dr. Brian Kriegler who is a statistical expert. *Id.*

As part of pre-class certification discovery, Plaintiffs' counsel also interviewed a number of percipient witnesses regarding the claims in this Action, which resulted in obtaining over 10 declarations that were used to support Class Certification. *Id.* ¶ 24.

In September 2020, Plaintiffs' counsel took the depositions of Defendant's Rule 30(b)(6) designees Susan Fitzhenry and Tim Ryan Stubenvoll. *Id.* ¶ 25.

Additionally, in December 2020, Defendant deposed three individuals who provided declarations in support of Plaintiffs' Motion for Class Certification. *Id.* ¶ 26.

Plaintiffs Dean A. Robbins, Timothy Green, Keith Washington, and Ian Clare were deposed by Defendant. *Id.* ¶ 27.

On January 15, 2021, Plaintiffs deposed Defendant's expert Robert Crandall. *Id.* ¶ 28.

**D. Class Counsel Obtains the Instant Settlement**

The Parties participated in two full-day mediations with experienced mediators—first in October 2019 with Tripper Ortman, and again in November 2024 with Steven Rottman, which led to this Settlement through a mediator's proposal. Settlement Agreement ("SA") ¶ II C.

**E. Class Counsel Obtains Preliminary Approval**

On May 8, 2025, Plaintiffs filed a motion for preliminary approval of the settlement. Dkt. 207. On July 24, 2025, this Court entered an order granting preliminary approval. Dkt. 214.

## III. RELIEF PROVIDED TO THE CLASS BY THE SETTLEMENT

### A. Maximum Settlement Amount, Attorney Fees And Costs, Class Representative Service Awards And Paga Allocation

The Settlement Agreement provides for a Gross Settlement Amount ("GSA") of $12,500,000. SA ¶ III 15. That amount is the maximum Defendant will pay. *Id.*

Settlement checks will be mailed directly to class members unless they opt out. SA ¶ 78. Any uncashed checks will be sent to the State of California's unclaimed property fund, which the class member will be able to claim it from. SA ¶ 80.

Subject to court approval, the following amounts will be deducted from the GSA: 1)Attorney fees in the amount of up to one third of the Gross Settlement Amount ($4,166,666.67); 2) costs not

to exceed actual out-of-pocket costs incurred, but also not to exceed $250,000; 3) Settlement Administration Expenses expected to be $14,500; 4) Service Enhancements to each of the 4 Plaintiffs of $10,000, totaling $40,000; 5) a Reserve Fund of $10,000 for disputed, untimely and self-identified claims; 6) a PAGA Settlement Fund of $400,000 (allocated 25% to PAGA Group Members ($100,000) and 75% to LWDA ($300,000); and 7) all taxes associated with the Settlement Payments. SA ¶¶ 15, 25, 33, 35, 49. The amount left over after these deductions is the Net Settlement Fund. SA ¶ 21. Any amounts for attorney fees, expenses, class representative service awards, or settlement administration expenses not approved by the Court will be reallocated to the Net Settlement Fund. SA ¶ 49(e).

Accordingly, assuming all requested deductions are approved, the Net Settlement Fund will be $7,618,833.33. The taxes associated with the Settlement Payments have not been deducted from this $7,618,833.33 figure as the amount of taxes has not yet been determined. If 25% of the PAGA Settlement Fund is included ($100,000), the Net Settlement Fund is $7,718,833.33.

Each Settlement Class Member will receive an "Individual Class Payment" which means the Settlement Class Member's pro rata share of the Net Settlement Amount calculated according to the number of Workweeks worked during the Class Period. SA ¶ III 16. Currently, it is estimated that the average settlement payment is $4,151.95. Paul Decl. ¶ 13,

For tax reporting purposes, the Settlement allocates 35% of each Individual Class Payment as wages and 65% as penalties and interest. SA ¶ III 72.

The PAGA Group Members will receive 25% of the PAGA Settlement Fund with 75% going to the LWDA. SA ¶ III 25.

The individual settlement shares of PAGA Group Members payment will be based on the PAGA Group Members' pro rata share of 25% of the PAGA Penalties calculated according to the number of pay periods worked during the PAGA Period. SA ¶ III 17.

For tax reporting purposes, the Settlement allocates all PAGA Group payments as penalties SA ¶ 72.

**B. Disposition Of Uncashed Checks And Reserve Fund**

Settlement Class Members and PAGA Group Members will have 120 calendar days after

mailing to cash their checks. SA ¶ 80. Reminder postcards will be mailed to them 30 days before the check cashing deadline. *Id*. Replacement checks will be reissued upon request up to 30 days after the mailing of reminder postcards. *Id.* Settlement Class Members and PAGA Group Members will then have 60 days to cash their replacement checks. *Id.* Any uncashed funds remaining after the mailing of the replacement postcards will be sent to California's unclaimed property fund, which the class member will be able to claim it from. *Id.*

Any unused amount in the Reserve Fund a year after preliminary approval will be sent to a Cy Pres recipient which will be California State Bar Greg E. Knoll Justice Gap Fund or another appropriate 501(c)(3) organization agreed to by the parties and approved by the court. *Id.* ¶ 69. The Greg E. Knoll Justice Gap Fund helps the public in many ways, including by protecting the rights of consumers and workers to avoid fraud and exploitation. https://www.calbar.ca.gov/Access-to-Justice/Grants/Greg-E-Knoll-Justice-Gap-Fund.

"The cy pres remedy must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachsin v. AOL LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011). Here, that standard is met because the proposed *cy pres* provides direct benefit to Californian workers.

## IV. SUMMARY OF NOTICE PROCESS AND CLASS RESPONSE

This motion is being filed before the expiration of the deadline for settlement class members to object or request exclusion. As of June 4, 2026, there are no objections or requests for exclusion. Paul Decl. ¶¶ 7-8. Plaintiffs will file a supplemental declaration with the final approval motion at which point the number of objections or requests for exclusion will be known definitively.

However, the notice process is complete. On April 17, 2026, the administrator Xpand Legal received records for 1,835 employees. Paul Decl. ¶ 4. Xpand ran all records through the National Change of Address database (NCOA) and updated all records. *Id.* On April 28, 2026, Xpand mailed the notice to all 1,835 class members. *Id.* As of June 4, 2026, Id. 38 notices have

been returned as undeliverable without a forwarding address. After skip-tracing, 27 notices were remailed to updated addresses. 11 notices are still undeliverable. *Id.*

## V. THE REQUEST FOR ATTORNEY FEES SHOULD BE GRANTED

Pursuant to Rule 23(h) the Court should determine whether the requested fee is reasonable. Where the settlement results in a common fund, a district court can use either the percentage of recovery method or the lodestar method and may use a lodestar cross-check to confirm that the percentage of recovery method results in a reasonable fee. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929-30 (9th Cir. 2020). Where a "case involves a common settlement fund with an easily quantifiable benefit to the class" the percentage of fund method is preferred. *Arredondo v. Delano Farms Co.*, No. 1:09-CV-01247-MJS, 2017 WL 4340204, at *4 (E.D. Cal. Sept. 29, 2017).

The settlement agreement between Plaintiffs and Phillips 66 allows for attorneys' fees in the amount of one third of the settlement amount or $4,166,666.66. SA ¶ 49(a).

Plaintiff's requests for Class Counsel fees of one-third of the settlement amount is fair. On a percentage or lodestar basis, the fee award sought by this Motion is within the range of reasonableness.

### A. The Fee Is Reasonable Under the *Vizcaino* Factors

The factors a district court looks at to evaluate the reasonableness of a fee include: 1) whether the results achieved for the class are exceptional; 2) the risk class counsel undertook in litigating the case, 3) the range of fee awards out of common funds of comparable size; 4) the burdens class counsel took in litigating the case, and whether those burdens were contingent; 5) any benefits conferred beyond the settlement fund. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-1050 (9th Cir. 2002). In addition, district courts applying *Vizcaino* have looked to an additional factor of the complexity of the case, the skill required, and the quality of work performed by plaintiff's counsel. *Rodriguez v. Nike Retail Services, Inc.,* 2022 WL 254349 *5 (N.D. Cal. 2022).

Pursuant to *Vizcaino,* a district court uses a 25% benchmark to determine attorney fees, with the Vizcaino factors used to determine whether there should be an upward or downward

departure from that benchmark. *Vizcaino supra* at 1048-1052.; *In re Omnivision Techs, Inc.,* 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008).

The Ninth Circuit has more recently said that: "The touchstone for determining the reasonableness of attorneys' fees in a class is the benefit to the class." *Lowery v. Rhapsody International, Inc.,* 75 F.4th 985, 988 (9th Cir. 2023).

**1) The Results Achieved for the Class are Exceptional.**

"Foremost" among the "considerations" in calculating a fee is "the benefit obtained for the class," *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), and "[e]xceptional results are a relevant circumstance." *Vizcaino*, 290 F.3d at 1048.

This settlement provides for a $12.5 million non-reversionary common fund. No class member will have to make a claim and no money will revert to the Defendant. The recovery per class member is significant, the average class member will recover thousands of dollars. For any uncashed checks, the money will be sent to the State Controller to be held for the class member.

And the $12.5 million settlement fund represents 82.5% of the estimated $15,150,063 exposure for damages under the Labor Code. Setareh Decl. ¶ 40.

There are also potential penalties at issue. A district court evaluating a settlement need not consider penalties in addition to damages. *Rodriguez v. West Publishing*, 563 F.3d 948, 964 (9th Cir. 2009). Here, the potential waiting time penalties total $4,634,100 and the potential wage statement penalties total $3,020,750. Setareh Decl.¶ 40. Thus, the total class exposure inclusive of penalties is $22,804,913. The $12.5 million settlement is 54.81% of this amount. The settlement is an excellent one, and this supports the requested fee award.

**2) The Risks Class Counsel Undertook in Litigating the Case.**

Where Class Counsel is working on a contingency with no guarantee of payment and advancing all costs: "Risk is a relevant circumstance." *Vizcaino supra* at 1048.

This case involved many risks. For example, as to the time punch rounding claim, there is great risk because whether rounding is unlawful is an issue before the California Supreme Court in *Camp v. Home Depot USA, Inc.,* S277518. And even if the California Supreme Court ultimately

finds that rounding is impermissible, that does not change the risk that existed when the settlement was agreed to.

Further, as to the auto-deduct claim, that claim likely would have required a survey to quantify the actual prevalence of missed, late or short meal breaks, resulting in a battle of the experts and the risk that plaintiff's survey either would be excluded, or not deemed credible by the trier of fact.

There would be an additional risk, namely that the jury would find at trial that Phillips 66's use of time card attestations rebuts the rebuttable presumption set forth in the California Supreme Court's decision in *Donohue v. AMN Services, LLC*, 11 Cal. 5th 58 (2021) which applies when employers do not have a record that a meal break was taken. In denying the parties' cross-motions for summary judgment on this issue, the Court found that there was a triable issue of fact as to whether the attestations rebut the presumption. Dkt. 195 at 105-9.

It is also fair to say that any substantial verdict in favor of the classes would have been appealed by Phillips 66. While Plaintiffs strongly believe the case is distinguishable, it is possible that the classes could have met with the same fate as those in *Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459 (9th Cir. 2023) where after a victory at trial, the Ninth Circuit ordered the case to be decertified.

And, of course, Phillips 66 had vast resources at its disposal to defend the action. This further heightened the risk of the litigation. *Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1303 (W.D. Wa. 2001): "Class counsel's risk was even greater, and their work made more difficult, because Microsoft is one of the nation's largest and most formidable companies, and it and several law firms defended the case vigorously for several years." See, e.g., *In re Nat'l Collegiate Athletic Assn. etc. Antitrust Litig*., 2017 WL 6040065, *3 (N.D. Cal. Dec. 6, 2017): "Plaintiffs' counsel achieved these exceptional raw-dollar, percentage, and per capita results despite facing off against some of the best, and most well-resourced, defense lawyers in the country."); *In re Heritage Bond*, 2005 WL 1594403 (C.D. Cal. 2005) *20 (noting defense counsel's "local and nationwide reputations for vigorous advocacy in the defense of their clients"

in approving one-third fee to plaintiffs' counsel). Here, Phillips 66 was represented by a highly regarded law firm Baker Hostetler who defended the case aggressively and with skill.

**3) The Range of Fee Awards in Cases of Comparable Size**

This case involved certified wage and hour claims involving novel and complex issues. As noted above, this case involved a certified class claim concerning issues of first impression. In other wage-and-hour cases resulting in a sizable settlement for the benefit of the class, class counsel were awarded one third of the common fund. For example, in *Lafitte*, the California Supreme Court affirmed a one-third award in a related wage and hour class actions that, like this case, involved extensive discovery, contentious law and motion practice, motions for summary judgment, a class certification motion, several experts, and even mediation. Lafitte, 1 Cal.5th at 506 (awarding one third attorneys' fees on a $19 million settlement); *Beaver v. Tarsadia Hotels*, 2017 WL 4310707 (S.D. Cal. 2017) (in a consumer class action involving novel issues awarding one-third attorneys' fees on a $51 million settlement); *Taylor v. Shippers Transport Express, Inc.,* 2015 WL 12658458 at *14 (awarding one third attorneys' fees on an $11 million settlement in a wage-and-hour case where a class was certified and survived summary judgment); *McGrath v. Wyndham Resort Development Corporation*, 2018 WL 637858 (S.D. Cal. 2018) (awarding one-third of attorneys' fees on a $7,250,000 settlement (where the parties completed exhaustive discovery, fully briefed motions for summary judgment and class certification, and participated in a full-day mediation). Similarly, in *Senne v. Kansas City Royals Baseball Corp*., 2023 WL 2699972 *14 (N.D. Cal. 2023) the district court awarded 30% of the $185 million common fund in a wage and hour case explaining that: "In complex or lengthy cases, courts have frequently awarded more than the benchmark of 25 percent and awards of 30 to 33 percent are common in such cases", and in *Frelkin v. Apple Inc.,* No. 3:13-cv-03451-WHA (ECF No. 475) (N.D. Cal. Aug. 13, 2022) the district court awarded 30% of the $29 million common fund in a wage and hour case.

**4) The Burdens Class Counsel Took on Warrant the Requested Fee Award.**

Where Class Counsel has undertaken the work on a contingent basis incurring many hours of attorney time and more than two hundred thousand dollars in expenses this warrants an upward

adjustment from the benchmark. *In re Omnivision Technologies, Inc.,* 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008): "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fee."; *Vizcaino,* 290 F.3d at 1050. "Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior." *Lealao,* 82 Cal.App.4th at 47-48. Such premiums over "normal hourly rates for winning contingency cases" "mirror[] the established practice in the private legal market." *Vizcaino,* 290 F.3d at 1051; *see also Graham*, 34 Cal.4th at 580 ("'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.'") (quoting *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001)); *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994) ("contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose").

Class Counsel undertook this litigation on a pure contingency basis. Class Counsel pursued the litigation for eight years, expending many hours in professional time and advancing over two hundred thousand dollars in expenses with no guarantee of repayment. Setareh Decl.¶ 74.

Therefore, the financial burden shouldered by Class Counsel supports an upward departure from the benchmark and the requested fee award.

**5) The Skill Required, the Complexity of the Case, and the Quality of Work.**

"The prosecution and management of a complex national class action requires unique legal skills and abilities . . . Thus, if counsel has represented intimate knowledge of the case, and applied their unique skills to obtain favorable results, this factor should weigh in favor of an increase in the benchmark rate." *Carlin v. Dairy America, Inc.,* 380 F.Supp.3d 998, 1021 (E.D. Cal. 2019). While perhaps a wage and hour case such as this one might not be particularly

complex if settled early, this case was prosecuted to the eve of trial, with a defendant with ample resources and motivation to fight aggressively. As a district court explained in applying this factor: "Given the contentious nature of the action, the Court finds that the result achieved in this matter would have been unlikely if entrusted to counsel of lesser experience or quality." *Zepeda v. PayPal Inc.,* 2017 WL 1113293 *20 (N.D. Cal. 2017)

The fact that Class Counsel obtained certification, and defeated summary judgment as to liability, is"some testament to counsel's skill." *In re Nexus GP Prods. Liability Litig*., 2019 WL 6622842 *12 (N.D. Cal. 2019) (finding an upward adjustment to the benchmark warranted where counsel had successfully opposed motions to dismiss.)

Further, the fact that this result was obtained against an extremely well-funded corporate defendant represented by skilled and respected counsel bears on the quality of work and skill demonstrated by Class Counsel. *In re Apple Inc. Performance Device Litig.*, 2021 WL 1022866 *6 (N.D. Cal. 2021): "Courts also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully."

**6) Benefits Conferred Beyond the Settlement Fund.**

The settlement is purely a monetary one, so this factor is not applicable, although a substantial settlement of this kind is likely to have a deterrent effect on employers.

**B. The Fee Is Reasonable Under the Percentage of Recovery Method**

The United States Supreme Court has recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert,* 444 U.S. 472, 478 (1980); *see Mills v. Auto Lite Co.,* 396 U.S. 375, 392-93 (1970). The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994); *see also Laffitte v. Robert Half Int'l., Inc.,* 1 Cal.5th 480, 489-90 (2016) (California courts recognize the common fund doctrine). When, as here, the claims arise under California law, California law governs the calculation and award of attorneys' fees. *See*

*Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Mangold v. Calif. Public Utilities Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995)).

The percentage-of-recovery method is most appropriate where, as here, the settlement results in a true common fund. *Laguna v. Coverall North America Corp*., 753 F.3d 918, 922 (9th Cir. 2014). The "'recognized advantages of the percentage method'" include "'relative ease of calculation," which reduces the burden on the court, "alignment of incentives between counsel and the class," and "a better approximation of [private] market conditions'" in contingency-fee litigation. *Kang v. Wells Fargo Bank, N.A.,* No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021) (quoting *Laffitte*, 1 Cal.5th at 503, 505). The percentage method has long been the "dominant" method of determining fees in cases like this one, in which counsel's efforts generated a non-reversionary cash settlement fund in a fixed amount for the benefit of the class. *In re Omnivision Techs*., 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007) (citing *Vizcaino,* 290 F.3d at 1046*; Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311; *Paul, Johnson, Alston, & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989)). Although the Ninth Circuit has established a "benchmark" fee of 25% for common fund cases, which a district court may increase or decrease if warranted in a particular case, *Six Mexican Workers*, 904 F.2d at 1311 (9th Cir. 1990), there is no such benchmark under California law. In appropriate cases, state and federal courts applying the percentage-of-recovery method frequently award 33- 1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc*., 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average around one-third of the recovery); *Laffitte*, 1 Cal.5th at 486-88 (affirming 33-1/3% fee); In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378-79 (9th Cir. 1995) (same); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456, 463 (9th Cir. 2000) (same).

Cases where counsel was awarded one third of the settlement amount in a settlement of California wage and hour claims include the following: *Haro v. Walmart, Inc*., 2025 WL 73109 *13 (E.D. Cal. 2025); *Boone v. Amazon.com Services, LLC*, 2024 WL 4172426 (E.D. Cal. 2024); *Nucci v. Rite Aid Corporation*, 2022 WL 1693711 (N.D. Cal. 2022); *Suarez v. Bank of America, N.A.,* 2024 WL 150721 (N.D. Cal. 2024); *Villafan v. Broadspectrum Downstream Services, Inc.,* 2021 WL 6332128 (N.D. Cal. 2021.) *See also Rodriguez v. Nike Retail Services, Inc*., 2022 WL 254349

*6 (N.D. Cal. 2022) (awarding 33% of the settlement fund in California wage and hour case); *Harrison v. Bank of America, Corp.,* 2021 WL 5507175 (N.D. Cal. 2021) (awarding 30% of the settlement fund in California wage and hour case).

Notably, the instant settlement compares favorably with all the above California wage and hour settlements. In the instant settlement the $12,500,000 common fund is shared between 1,835 class members. In the *Haro/ Walmart* settlement the $5,200,000 common fund was shared between 221,392 class members. *Haro supra* at *1, 3. In the *Boone/ Amazon.com* settlement the $5,500,000 common fund was shared between 250,000 class members. *Boone supra* at *3. In the *Nucci/ Rite Aid* settlement the $12,000,0000 common fund was shared between 29,541 class members. *Nucci supra* at *2. In the *Suarez/ Bank of America* settlement, the $1,890,000 common fund was shared between 16,577 class members. *Suarez supra* at *1. In the *Villafan/ Broadspectrum Services* settlement the $5,000,000 common fund was shared between 3,208 class members. *Villafan supra* at *1-2. In the *Rodriguez/ Nike* settlement, the $8,250,000 common fund was shared between 16,635 class members *Rodriguez supra* at *1. In the *Harrison/ Bank of America* settlement, the $11,500,000 settlement fund was shared between 20,190 class members. *Harrison supra* at *1-2. Therefore, the instant settlement provides more substantial relief to each individual class member than each of the above settlements where between 30% and 33 1/3% in fees were awarded.

### C. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Award

A lodestar cross-check also confirms the reasonableness of the fee award. Class Counsel's lodestar in this case is $2,045,869.25. Setareh Dec. ¶ 73; Hawkins Decl. ¶ 11. That results in a multiplier of 2.04.

Class counsel expended considerable time and resources in litigating this matter. The work done by the attorneys working on this case includes drafting the pleadings, opposing Phillips 66's motion to dismiss, propounding and responding to discovery, drafting a motion to stay and/or for appointment of lead counsel, drafting a motion for leave to file an amended complaint, interviewing absent class members about their experiences working for Phillips 66, deposing Phillips' 66's Rule 30(b)(6) designees, deposing Phillips 66's expert Robert Crandall, briefing the initial motion for class certification and the renewed motion, defending depositions of the named plaintiffs, defending

depositions of absent class members, working with multiple experts to analyze Phillips 66's time records, briefing cross-motions for summary judgment, preparing for and attending two mediations, reviewing and negotiating the settlement agreement, and drafting settlement approval papers. Setareh Decl. ¶ 71. Class counsel will incur more time drafting the motion for final approval, attending the hearing, responding to class member inquiries, and monitoring the settlement distribution.

In calculating the lodestar, class counsel's billing rates remained consistent with the market for attorneys of comparable skill in the Northern District. *E.g., Hefler v. Wells Fargo & Co.,* No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *39 (N.D. Cal. Dec. 18, 2018) (finding $650-$1,250 for partners or senior counsel and $400-$650 for associates were reasonable rates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-cv-2672-CRB, 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275-$1,600 for partners, $150-$790 for associates, and $80-$490 for paralegals reasonable "given the complexities of th[e] case and the extraordinary result achieved")); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-6059-EMC, 2018 U.S. Dist. LEXIS 80261, at *13 (N.D. Cal. May 11, 2018) ("[R]ates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable."); *Gutierrez v. Wells Fargo Bank, N.A*., No. 07-cv-05923-WHA, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) (approving rates in 2015 for Bay Area attorneys of $475-$975 for partners and $300-$490 for associates).

In determining whether to apply a positive or negative multiplier to the lodestar, a district court considers one or more of the following factors including: "quality of representation, the benefit obtained for the class, the complexity and nature of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prods. Liability Litig.,* 654 F.3d 935, 941-942 (9th Cir. 2011). However, the benefit obtained for the class is "foremost amongst these considerations." *Id.*

Here, for the reasons discussed *supra*, all factors support an upward adjustment of the lodestar. Perhaps most importantly, the results achieved for the class are excellent. Further, the results were obtained against highly skilled opposition, reflecting the quality of the representation, and supporting the request fee award. Additionally, Class Counsel have demonstrably exhibited a

devotion to this case – and the class –which was duly reflected in the outstanding results achieved. Class Counsel remained unwavering in their prosecution of the claims alleged.

Courts applying a discretionary lodestar crosscheck commonly approve fees reflecting significant multipliers ranging up to 9 and, in appropriate cases, considerably higher. See, e.g., *Steiner v. Am. Broadcasting Co*., 248 Fed. App'x 780, 783 (9th Cir. 2007) (cross-check multiplier of 6.85 was "well within the range of multipliers the courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (cross-check multiplier of 3.65 in the face of an approximate $97 million dollar fund); id. at 1052 (collecting large-fund cases with cross-check multipliers from 0.6-19.6); *In re Wells Fargo & Co. Shareholder Deriv. Litig*., __ Fed. App'x __, 2021 WL 1511501 (9th Cir. Apr. 16, 2021) (affirming 22% fee from $240 million settlement fund, for 3.8 multiplier); NCAA, 2017 WL 6040065, at *9 (collecting cases with multipliers of 3.41-9.3); *Craft,* 624 F.Supp.2d at 1125 (approving cross-check multiplier of 5.2; collecting cases with multipliers from 4.5 to 19.6*); In re Rite Aid Corp. Sec. Litig.*, 362 F.Supp.2d 587, 589-90 (E.D. Pa. 2005) (awarding 25% fee from $126 million settlement fund for 6.96 multiplier); *Xcel Energy,* 364 F.Supp.2d at 999 (approving $20 million fee with 4.7 multiplier); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp*., 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (awarding 20% of $100 million settlement fund, for 15.6 multiplier); *Asare v. Change Grp. New York, Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) (McMahon, C.J.) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Credit Default Swaps*, 2016 WL 2731524, at *17 (approving fees constituting a "multiple of just over 6" times the lodestar with $1.9 billion settlement fund); *Payment Card Interchange Fee*, 991 F. Supp. 2d at 448 (multiplier of 3.41 with $5.7 billion fund); *NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. at 489 (awarding fees representing a 3.97 multiplier of $36,191,751 lodestar, noting that "multipliers of between 3 and 4.5 have become common."); *In re Beverly Hills Fire Litig.*, 639 F.Supp. 915, 924 (E.D.Ky.1986) (5 times multiplier); *In re RJR Nabisco, Inc. Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L.Rep. (CCH) ¶ 96,984 (S.D.N.Y.1992) (Mukasey, J.) (awarding a percentage-based fee representing 6 times lodestar); *In re Sumitomo*

*Copper Litig.*, 74 F. Supp. 2d 393, 399–400 (S.D.N.Y. 1999) ("Reference may be made also to the record-breaking employment discrimination settlement with Texaco. In that situation, a multiplier was utilized of 5.5 times lodestar.") Class Counsel have routinely been awarded fees within this range in similar complex class actions including, but not limited to: *Valadez v. Stater Bros. Markets*, San Bernardino Superior Court, Case No. CIVDS1701283 (3.07 multiplier); *Emetoh v. FedEx Freight, Inc.*, Northern District of California, Case No. 17-cv-7272-YGR (2.79 multiplier). Setareh Decl. ¶ 28.

The facts and circumstances of this case justify a lodestar multiplier above that commonly awarded; however, the multiplier requested by Counsel of 2.04 falls well within the "typical" range accepted by our courts.

**D. Preliminary Responses of the Class to the Settlement**

"The reaction of the class may also be a determining factor in determining the fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008), citing *In re Heritage Bond Litiq., No. 02–ML–1475–DT, 2005 WL 1594389, at *15 (C.D.Cal. June 10, 2005)* (Approving 1/3 attorney fee request in the face of one opt-out and one objection out of 6,000 class members). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D.Cal.2004).

At the time of this filing, out of the 1,835 class members mailed notice, there have been no objections or opt-outs from the proposed settlement. Paul Decl. ¶¶ 4, 7-8. This represents a 100% participation rate.

In similar circumstances our courts have found that settlements involving even smaller class sizes and many more objections than those at issue here constitute a strong endorsement of the proposed terms, including the noticed attorney fees. As discussed by the court in I*n re Heritage Bond Litig.*:

> [T]he Court finds that the number of persons who have manifested any objection to the request for attorneys' fees-either by opting out of the class or filing an objection with this Court-is remarkably small given the wide dissemination of notice. Accordingly, the Court

> concludes that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund.

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *16 (C.D. Cal. June 10, 2005) (Recognizing one objection out of a class of approx. 67,000 strongly supported the requested 1/3 attorney fee award); See also, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir.2004) (affirming settlement with 45 objections out of 90,000 notices sent); *Nichols v. SmithKline Beecham Corp.*, No. CIV.A.00-6222, 2005 WL 950616, at *21 (E.D. Pa. Apr. 22, 2005)(Six objections out of a class of 37,671 weighed in favor of approval of counsel's attorney fee request in the amount of 30%).

## VI. THE REQUEST FOR LITIGATION COSTS SHOULD BE GRANTED

In a common fund settlement, Class Counsel are entitled to recover the reasonable expenses incurred in prosecuting the litigation. Fed. R. Civ. P. 23(h); *Omnivision*, 559 F.Supp.2d at 1047. The Settlement provides for up to $250,000 for litigation expenses. SA ¶ 49(a). Class Counsel respectfully requests $204,088.86 in costs. Class Counsel incurred $204,088.86 in costs. Setareh Decl. ¶ 74; Hawkins Decl.¶ 12. These costs include costs for Plaintiff's experts, mediation fees, deposition fees, the cost of sending out class notice and filing fees. *Id*. All of the costs submitted were reasonably incurred in the prosecution of this matter over the past eight years, benefited the class, and would have been charged to a paying client had this been a non-contingency case. The costs are therefore reimbursable, and the Court is respectfully asked to award $25,000 in costs. *Kang v. Wells Fargo Bank, N.A.*, No. 17-CV-06220-BLF, 2021 WL 5826230, at *16 (N.D. Cal. Dec. 8, 2021) ("The principal expenses include plaintiffs' expert damages consultants […], plaintiffs' share of the mediator's fees for two mediations, and the class notices"); *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018); *Omnivision*, 559 F. Supp. 2d at 1047.

## VII. THE CLASS REPRESENTATIVE SERVICE AWARDS SHOULD BE GRANTED

As discussed in the Preliminary Approval Motion, Plaintiffs seek service awards of $10,000 to Plaintiffs Robbins, Green, Washington and Clare for the extensive time and effort they contributed to this case, without which the $12,500,000.00 Settlement would not exist. All Plaintiffs have done

substantial work on the case. An award of $10,000 to each named Plaintiff is reasonable in light of the fact that the individual payments to class members will be in many cases thousands of dollars. Plaintiffs were deposed in this matter. Robbins Decl. ¶ 7 (Dkt. 207-4); Green Decl. ¶ 10 (Dkt. 207-5); Washington Decl. ¶ 7 (Dky. 207-6); Clare Decl. ¶ 7 (Dkt. 207-7). Plaintiff Dean Robbins and Timothy Green responded to discovery requests. Robbins Decl. ¶ 7; Green Decl. ¶ 10. Plaintiff Dean Robbins attended the first mediation in person. Robbins Decl. ¶ 7.

Multiple courts have approved $10,000 or higher incentive awards in wage and hour cases. *Brown v. Tetra Tech, Inc.,* 2025 WL 1400295 *10 (E.D. Cal. 2025) (approving $10,000 incentive awards each for three class representatives); *Suarez v. Bank of America*, 2024 WL 150721 *4 (N.D. Cal. 2024) (approving $10,000 award to each of two class representatives); *Alamanzar v. Home Depot USA, Inc*., 2024 WL 36175 *12-13 (approving $15,000 incentive award); (E.D. Cal. 2024); *Villafan v. Broadspectrum Downstream Services, Inc.,* 2021 WL 6332128 *8 (N.D. Cal. 2021) (approving $10,000 incentive award and collecting cases where $10,000 or more was awarded); *Jiminez v. Allstate Ins. Co*., 2021 WL 4316961 *9 (C.D. Cal. 2021) (approving $10,000 incentive award); *Walsh v. CorePower Yoga LLC*, 2017 WL 4390168 **12-13 (N.D. Cal 2017) (approving $10,000 incentive award in part due to risk in suing employer.)

It is also worth noting that the standard $5,000 incentive award referred to in many cases is outdated because of inflation. *Bernstein v. Virgin America, Inc*, 2023 WL 7284158 *3 fn 1 (N.D. Cal. 2023) (observing that in the context of incentive awards: "At some point the common law will have to reckon with inflation.") In 2000, the Ninth Circuit found $5,000 incentive awards reasonable in a $1.75 million settlement. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000.) According to the CPI inflation calculator, $5,000 in January 2000 is equivalent to $9,864 today. https://www.bls.gov/data/inflation_calculator.htm.

## VIII. CONCLUSION

The motion for attorney fees, litigation expenses and class representative service payments should be granted.

DATED: June 8, 2026 **SETAREH LAW GROUP**

*/s/ Shaun Setareh*
SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
Attorneys for Plaintiffs